608 So.2d 978 (1992)
Eugene V. COUSINS
v.
The CITY OF NEW ORLEANS and the New Orleans Fire Department.
No. 92-CA-0561.
Supreme Court of Louisiana.
November 30, 1992.
Rehearing Denied January 28, 1993.
Edward P. Gothard, Edward J. McCloskey, McCloskey, Langenstein & Stoller, New Orleans, for applicant.
William D. Aaron, Jr., Richard C. Bates, Brett J. Prendergast, Jay A. Ginsberg, Beverly Zervigon, Val K. Scheurich, III, Belhia Martin, New Orleans, for respondents.
LEMMON, Justice.
We granted certiorari to determine whether the credit extended by La.Rev. Stat. 23:1225 to employers, if an employee collecting worker's compensation benefits from the employer also receives benefits from a disability plan funded at least in part by the employer, is applicable when the employee is also eligible for tenure-based retirement benefits under the same plan that provides the disability benefits.
After working as a firefighter for the City of New Orleans since 1961, plaintiff was injured on the job in 1983. The City began paying worker's compensation benefits to plaintiff after the injury.
On May 17, 1984, plaintiff retired from city service under the provisions of La.Rev. Stat. 33:2101-21, the Firefighters' Pension and Relief Fund.[1] Plaintiff began receiving weekly benefits from the Fund in an amount equal to fifty-six and one-half percent of his wages at the time of retirement.
The City thereafter stopped paying worker's compensation benefits. After plaintiff filed the instant action, the City resumed payment of compensation benefits through May 9, 1987, at which time payment of benefits was again discontinued. The City then amended its answer to claim a limitation of its liability for worker's compensation benefits under La.Rev.Stat. 23:1225 C(1), which at the time of plaintiff's disability provided:
If an employee receives remuneration from (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless *979 there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury. (emphasis added).[2]
Relying on Section 1225 C, the City asserted that since plaintiff was receiving benefits under a disability benefit plan, the City was entitled to a credit against its compensation obligation for the amount of disability benefits proportionate to the City's funding of the disability benefit plan.
In the trial court the parties stipulated that plaintiff was permanently disabled by a compensable accident and limited the issues to the applicability of the Section 1225 C credit and the calculation of benefits if the credit was applicable.
The trial court decided that the City was entitled to a credit against its worker's compensation obligation because of plaintiff's receipt of benefits from an employer-funded disability plan. Inasmuch as the disability benefits exceeded the worker's compensation benefits, the court ruled that plaintiff was not entitled to the latter.
The court of appeal reversed the part of the judgment awarding a credit to the City and remanded the case to the trial court on another issue. 580 So.2d 536. The court reasoned that the City had failed to establish the proportionate amount of disability pension that it had funded and thus failed to prove entitlement to a credit.
This court granted certiorari, 584 So.2d 1145, and remanded the case to the court of appeal to determine whether plaintiff was receiving disability benefits (which serve to reduce workers' compensation benefits under Section 1225 C(1)(c)) or retirement benefits (which do not reduce compensation benefits). This court further instructed the intermediate court, if it determined that plaintiff was receiving disability plan benefits, to remand the case to the trial court for additional evidence on the City's proportionate funding of the plan.
On remand, the court of appeal concluded that the City made a prima facie showing that plaintiff was receiving disability benefits from a plan partially funded by his employer and that the City was entitled to a credit under Section 1225 C(1)(c). 594 So.2d 1107. The court then remanded the matter to the district court for additional evidence on the amount of credit to which the City is entitled.
This court granted certiorari, 598 So.2d 343, to review the issue and to attempt to reconcile the decision of the court of appeal in this case with the decisions in McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2nd Cir.1991), and Domingue v. Hartford Ins. Co., 568 So.2d 221 (La.App. 3rd Cir.1990).
Worker's compensation benefits are frequently part of an overall system by which an employer provides to its employees protection against loss of wages and continuation of a minimum amount of wages or support in the event of disability, unemployment, advanced age or death. See 4 Arthur Larson, Law of Workmen's Compensation § 97 (1990). The legislatures of several states, apparently recognizing that the employee who suffers only one wage loss may receive wage continuation benefits from several sources for which the employer is wholly or partially responsible, have enacted provisions for coordination of wage-loss benefits which maintain the level of benefits to the employee while preventing *980 duplication of benefits provided under different parts of the system. Id.
In 1978 the Louisiana Legislature enacted La.Rev.Stat. 23:1225 to provide for reduction of state worker's compensation benefits when the employee also receives federal Social Security benefits. The legislation took advantage of a federal statute which permitted a reduction in state compensation payments which when combined with the federal payments would amount to more than the federal maximum. A reduction of the burden on the state compensation system was thereby accomplished. Wex S. Malone & H. Alston Johnson, III, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise, § 289 (2d ed. 1980).
In 1983 the Legislature added (1) Paragraph B, which prohibited compensation benefits in any week in which the employee receives unemployment compensation benefits; (2) Paragraph C, which provided for reduction of worker's compensation by limiting combined remuneration from worker's compensation, old age insurance benefits under Social Security, benefits under disability benefit plans and other worker's compensation benefits to two-thirds of wages; and (3) Paragraph D, which apparently barred recovery of state worker's compensation benefits after a final adjudication, judgment or settlement of a claim under any federal worker's compensation law.[3]
The present case focuses on Section 1225 C. In that section the Legislature effectively authorized a credit for the employer against its worker's compensation obligation when the employee receives other enumerated benefits. The credit is allowed for benefits received under a disability benefit plan, the credit being proportionate to the percentage of the plan funded by the employer.[4] Significantly, there is no mention in Section 1225 C of a credit for tenure-based retirement benefits. It is therefore important to determine first the nature of the benefits payable to plaintiff from the Pension and Relief Fund.
La.Rev.Stat. 33:2117 (now La.Rev.Stat. 11:3381) clearly provides for a firefighter with more than twenty years of service to receive retirement benefits at the rate of fifty percent of his average compensation during the best year of service preceding the date of retirement, plus two-and-one half percent for each year of service in excess of twenty. Plaintiff, who served for twenty-two years and seven months, was therefore entitled to retirement benefits at fifty-six and one-half percent.
On the other hand, La.Rev.Stat. 33:2113 (now La.Rev.Stat. 11:3376) clearly provides for disability benefits, when the fireman is disabled while in the performance of his duties but is capable of doing other work, at fifty percent of his compensation on the date of his retirement or at the amount provided in La.Rev.Stat. 33:2117, whichever is greater. Because the benefits to which plaintiff was entitled under Section 2117 were greater than fifty percent, he was also entitled to fifty-six and one-half percent of his compensation as disability benefits.
A trustee of the Fund testified that plaintiff would have received the same amount of benefits whether he retired under the disability plan or the retirement plan. According to the officer, plaintiff chose the disability pension because a portion of the benefits are exempt from income taxation. For his part, plaintiff verified that he had taken a disability pension. The court of appeal, in effect, held that plaintiff was stuck with the choice he had voluntarily made.
At the time of his disabling injury plaintiff's right to retirement benefits had become fully vested. He could have taken early retirement then without prejudice to his right to receive the full amount of worker's compensation benefits payable because of his disability. He also, according *981 to the trustee, could have transferred at any time from the old (pre-1986) system into the post-1986 actuararily funded system.
There is no compelling reason for holding that plaintiff forever forfeited his vested right to receive retirement benefits when he elected to take the equal amount of disability benefits. Plaintiff's technical election between pension plans did not have any binding effect on the rights of any party. Both plans were part of the same statutory scheme for firefighters and were funded from the same pool. There would have been no detriment to the Fund if plaintiff had transferred from receiving disability benefits to receiving the retirement benefits to which he was equally entitled, as long as he did not receive both at the same time.[5]
The Section 1225 C credit constitutes a restriction on an injured employee's right to worker's compensation benefits and must be strictly construed. Inasmuch as Section 1225 C is inapplicable to an employee who retires under the tenure-based retirement plan, we construe Section 1225 C as inapplicable to a disabled employee who is eligible for retirement with the same amount of benefits under both the disability benefit plan and the tenure-based retirement benefit plan, especially when the latter controls the amount of benefits payable.[6]
Accordingly, the judgments of the lower courts awarding the City of New Orleans a credit against its worker's compensation obligation based on the disability retirement benefits received by plaintiff from the Firefighters' Pension and Relief Fund are reversed. The case is remanded to the district court to fix the amount of worker's compensation benefits.
NOTES
[1] La.Rev.Stat. 33:2101-21 were redesignated in 1991 as La.Rev.Stat. 11:3361-90.
[2] Section 1225 C(1) was amended in 1989 to provide:

If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage. (emphasis added).
[3] Paragraph D was repealed in 1989.
[4] The proportionate limitation was apparently intended to avoid the prohibition in La.Rev.Stat. 23:1163 against an employer's collecting directly or indirectly from an employee the premiums for compensation insurance. We do not comment on whether Section 1225 C violates this prohibition.
[5] Only because plaintiff had a vested right to retirement benefits in excess of fifty percent were his disability benefits fixed at the higher than minimum amount.
[6] This construction accords with that of intermediate courts of other circuits. See McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2nd Cir.1991) (City was not entitled to a credit against its worker's compensation obligation for plaintiff's medical retirement benefits paid under the City's plan, when he was eligible for early retirement with the same amount of benefits); Domingue v. Hartford Insurance Co., 568 So.2d 221 (La.App. 3rd Cir.1990) (at the time of her injury plaintiff had a fully vested right to early retirement benefits, and although her disability benefits were somewhat greater in amount, the total payments remained essentially a retirement benefit based on years of service so that the Section 1225 C credit was inapplicable.)