619 So.2d 57 (1993)
Randy MATTHEWS
v.
CITY OF ALEXANDRIA (Two Cases).
James NUGENT
v.
CITY OF ALEXANDRIA.
No. 92-C-1784.
Supreme Court of Louisiana.
May 24, 1993.
Application for Rehearing Dismissed June 22, 1993.
*58 Daniel E. Broussard, Jr., Broussard, Bolton, Halcomb & Vizzier, for applicant.
Steven W. Cook, Bolen, Erwin, Johnson & Coleman, for respondent.
HALL, Justice.[*]
We granted certiorari in these consolidated cases to examine the burden of proof placed upon an employer when claiming a credit against worker's compensation payments for "benefits under disability benefit plans in the proportion funded by an employer..." LSA-R.S. 23:1225(C)(1)(c). Finding that the employer is entitled to and has proven the amount of the credit, we affirm the judgments of the court of appeal which allowed the credit in specific amounts.

I.
Randy Matthews and James Nugent were firemen employed by the Alexandria Fire Department. Matthews was hired on April 25, 1977, and Nugent on August 18, 1973. Both were injured in 1986 while in the course and scope of their employment. Matthews and Nugent received temporary, total disability worker's compensation benefits and both took disability retirement in 1987 under the Firemen's Pension and Relief Fund for the City of Alexandria, LSA-R.S. 11:3101, et seq., in the amount of two-thirds of their former salaries.[1] The City terminated worker's compensation payments when the plaintiffs began receiving disability retirement benefits, claiming a credit under LSA-R.S. 23:1225. Thereafter, Matthews filed two separate suits seeking continuation of worker's compensation benefits in connection with two separate work-related accidents. Suit was also filed by Nugent, likewise for continuation of worker's compensation payments.
The statutorily authorized Alexandria Fireman's Pension and Relief Fund is a non-actuarially sound system, closed to new employees since 1980. The contributions made by the current employees are not invested to cover future benefits, but are used, along with the City's contributions, to pay current benefits. In other words, it is a pay-as-you-go system. The employees contribute 8% of their monthly salaries and the City matches that contribution, contributes various other amounts as required by statute and then makes up any *59 deficit in the system from year to year.[2]
Virgil Stanford, Director of Finance for the City of Alexandria, testified as to the specific amounts that had been contributed to the system from fiscal year 1978, beginning May 1, 1977, to April 30, 1987. No records for the years prior to fiscal year 1978 were introduced since those records could not be located. It was speculated that the records had either been destroyed or lost as the City has only had control over the fund since 1987. Stanford testified that over the period from fiscal year 1978 to fiscal year 1987, the year plaintiffs retired, the employees contributed 25.48% to the fund and the City contributed 74.52%. This testimony was supported by an exhibit, a copy of which is attached to this opinion as Exhibit A.
The trial court's judgment was in favor of plaintiffs, awarding supplemental earnings benefits and denying the City of Alexandria a credit for the disability retirement benefits received by plaintiffs.[3] The court of appeal amended the judgment and awarded the city a set-off against the worker's compensation payments for the disability pension benefits in proportion to the amount funded by the employer.[4] This court granted plaintiffs' writ application and remanded the case to the court of appeal for a determination of the amount of the credit, if any, established by the record. 592 So.2d 1285 (La.1992). Because more complete records were unavailable, the court of appeal used the 10-year average referred to above to find that the employees contributed 25.48% of the plan and the City, 74.52%.[5] Therefore, the City was entitled to a credit against worker's compensation benefits of 74.52% of disability benefits paid.[6] We granted plaintiffs' writ application to review that decision, 613 So.2d 958 (La.1993).

II.
In Cousins v. City of New Orleans, 608 So.2d 978, 979-80 (La.1992), this court held:
"Worker's compensation benefits are frequently part of an overall system by which an employer provides to its employees protection against loss of wages and continuation of a minimum amount of wages or support in the event of disability, unemployment, advanced age or death. See 4 Arthur Larson, Law of Workmen's Compensation § 97 (1990). The legislatures of several states, apparently recognizing that the employee who suffers only one wage loss may receive wage continuation benefits from several *60 sources for which the employer is wholly or partially responsible, have enacted provisions for coordination of wage-loss benefits which maintain the level of benefits to the employee while preventing duplication of benefits provided under different parts of the system. Id."

LSA-R.S. 23:1225 is such a provision. Specifically, LSA-R.S. 23:1225(C)(1) provided in pertinent part at the time the plaintiffs suffered their injuries as follows:
C. (1) If an employee receives remuneration from: (a) benefits under the Louisiana worker's compensation law, (b) old age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced..., so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury. [emphasis added][7]
LSA-R.S. 23:1225(C)(1)(c) allows a credit for disability retirement benefits in the proportion funded by the employer, but this does not include retirement benefits based on tenure. Cousins, supra; Domingue v. Hartford Ins. Co., 568 So.2d 221 (La.App. 3d Cir.1990), writ denied, 571 So.2d 654 (La.1990); McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App.2d Cir.1991). The employer has the burden of proving both the entitlement to and amount of the credit. Vallery v. State, 605 So.2d 1380 (La.App. 3d Cir.1992), writ denied 609 So.2d 225 (La.1992); Holmes v. International Paper Co., 559 So.2d 970 (La.App.2d Cir.1990). We recognized in a footnote in Cousins, supra, that the requirement that the credit only be in proportion to the amount funded by the employer was apparently an effort to avoid a conflict with LSA-R.S. 23:1163, which prohibits an employer from collecting, directly or indirectly from an employee, premiums for worker's compensation insurance.

III.
Matthews and Nugent were not vested in the Alexandria Fireman's Pension and Relief Fund for tenure based retirement, having been employed by the fire department for less than 20 years. Unlike the plaintiffs in Mckenzie, supra, Domingue, supra, and Cousins, supra, the plaintiffs in these cases were not eligible for tenure-based retirement benefits. No such rights vested until after 20 years of service, LSA-R.S. 11:3113(3). Neither plaintiff had served the requisite amount of time and therefore only qualified for retirement based on their disability, LSA-R.S. 11:3113(1). Under the statute, disability benefits are payable in a certain amount, two-thirds of pay, without reference to years of service. Plaintiffs would have been entitled to these benefits if they had been hurt the first day on the job and these benefits can be terminated if the employee no longer is disabled. Thus, plaintiffs' benefits are not retirement benefits based on length of service, and are strictly disability benefits as described in LSA-R.S. 23:1225(C)(1)(c).
The main issue, then, is whether the City proved the proportion in which it contributed to the plan and thereby the amount of the credit to which it was entitled. *61 The court of appeal based its decision on a 10-year average of contributions by the employees and the City ending in 1987, when the plaintiffs retired. The plaintiffs contend that the City failed to carry its burden of proof because the records relied on by the City did not extend to the full period of the plaintiffs' employment and did not disclose the amounts the fund paid out in regular retirement and death benefits, as well as disability retirement.
Clearly, the disability benefits are principally funded by the employer/City. In the ten years prior to plaintiffs' disability, the City paid $4,887,759 into the pension and relief fund as compared to $1,671,435 paid in by employees. Thus, the City's proportionate part of the funding over this period of time was 74.52%. The percentage of payments into the fund varied from year to year, and there are no records available prior to fiscal year 1978, including the first four years Nugent worked for the City. The records do cover virtually the entire length of Matthews' employment. There is no reason to believe the proportionate contributions during the four years prior to 1978 varied in any substantial degree from the proportionate contributions during the next ten years.
The City has borne its burden of proof that a substantial portion of the disability benefits was funded by it. Taking an average of the proportionate contributions for the prior ten years is a fair and reasonable method of calculating the City's proportion. Plaintiffs' do not suggest any other method and their argument that no credit should be given because the City's proportion cannot be established with mathematical precision ignores the reality of the situation. An average of the past ten years, taking into account the type of pension plan involved and the availability of the records, fairly reflects the City's proportion of funding of the disability benefits due these plaintiffs.
Finally, plaintiffs urge that since the fund pays out other types of benefits, such as widows and regular retirement benefits, the percentages relied on by the court of appeal are in error. However, even if the City had provided a breakdown of the amounts paid for each type of benefit, the percentages of contributions to the fund would remain the same.
Plaintiffs rely on Vallery v. State, supra, to bolster their position. In Vallery, the majority of a five-judge panel of the Third Circuit held that the state, although entitled to credit for disability retirement benefits, failed to prove the proportion funded by it for the disability feature of the employee's disability retirement benefit as distinguished from the retirement feature. The majority expressed disagreement with the decision of the panel in the instant Matthews case which we are reviewing. Without discussion of the correctness of the Vallery decision, we note that it is readily distinguishable on its facts. Vallery involved an actuarially sound retirement system in which the employee's retirement rights had vested by reason of years of service. Such is not the situation in the instant case as previously discussed.

IV.
The court of appeal correctly held that the City is entitled to a credit against worker's compensation benefits due the plaintiffs for disability benefits paid to the plaintiffs in the proportion funded by the City, and that the City bore its burden of proving that the proportion funded by the City was 74.52%. Accordingly, the judgments of the court of appeal are affirmed.
AFFIRMED.
KIMBALL, J., dissents and assigns reasons.
WATSON, J., dissents for the reasons assigned by KIMBALL, J.

*62
 EXHIBIT A
FIR-CON.WK1 City of Alexandria
 Firemens' Pension and Relief Fund
 Pension Contributions
 1978-1988
Source of Contributions FY 78 FY 79 FY 80 FY 81 FY 82 FY 83 FY 84 FY 85 FY 86 FY 87 TOTAL %
Employee contributions 118,838 128,220 144,216 163,789 182,618 187,744 180,795 $189,187 $192,812 $183,216 $1,671,435 25.482%
City contributions:
 Annual appropriations 5,000 5,000 5,000 5,000 5,000 5,000 5,000 5,000 5,000 5,000 $ 50,000 0.762%
 Fire insurance commissions 36,985 40,482 44,183 49,920 54,736 44,876 45,779 20,158 27,389 36,169 $ 400,677 6.109%
 Deficit support 265,490 298,018 355,817 319,080 304,264 398,124 508,779 549,842 542,611 682,331 $4,224,356 64.404%
 Sale of condemned property 0 0 0 0 0 0 0 0 0 0 $ 0 0.000%
 owned by Fire Department
 Rewards and Gifts 429 425 425 200 550 250 200 100 0 100 $ 2,679 0.041%
 Parking Meters 525 0 0 0 0 0 0 0 0 0 $ 525 0.008%
 Dividends and interest 16,662 16,626 19,258 23,181 21,810 22,643 22,198 23,801 22,969 19,234 $ 208,382 3.177%
 Other 429 121 6 38 43 0 140 126 140 97 $ 1,140 0.017%
 _______ _______ _______ _______ _______ _______ _______ ________ ________ ________ __________ ________
 TOTALS:444,358 488,892 568,905 561,208 569,021 658,637 762,891 788,214 790,921 926,147 6,559,194 100.000%
 ======= ======= ======= ======= ======= ======= ======= ======= ======= ======= ========= ========
Contributions by Calendar CY 78 CY 79 CY 80 CY 81 CY 82 CY 83 CY 84 CY 85 CY 86 CY 87 TOTAL %
Year
Randy Mathews 763 935 1,075 1,313 1,386 1,463 1,563 1,670 1,752 1,239 $ 13,159 0.201%
James Nugent 906 1,031 1,185 1,404 1,543 1,562 1,666 1,752 1,783 1,596 $ 14,428 0.220%

KIMBALL, Justice (dissenting).
The employer bears the burden of proving the amount of any credit it may be entitled to under La.Rev.Stat. 23:1225(C)(1)(c), determined as the proportion of the disability benefit plan funded by the employer during the period of the claimant's employment. In the instant case, the employer provided no evidence of the proportion it funded the disability benefit plan during fiscal years 1974 through 1977. Thus, the employer has failed to satisfy its burden of proving its entitlement to a credit for this time period. The employer should only be awarded a credit for fiscal years 1978 through 1987, the years for which the employer has satisfied its burden of proof. I respectfully dissent from the majority opinion which grants the City of Alexandria a credit greater than that to which it is entitled.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Lemmon, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Matthews receives a total of $1,307.87 per month in disability retirement and Nugent receives $1,311.89 per month in disability retirement.
[2] Under LSA-R.S. 11:3109 the city must contribute "[t]he proceeds of the sale of condemned property owned and used by the fire department"; "[a]ll rewards, gifts or emoluments that may be paid or given for or on account of extraordinary service of said fire department"; an amount equal to the amount paid in by the employees; "the sum of five thousand dollars annually"; "twenty five percent of the gross proceeds collected from the operation of parking meters in the city of Alexandria"; "[t]he annual proceeds of all license taxes imposed and collected by the city of Alexandria, from fire insurance companies and/or fire insurance agents doing business in the said city of Alexandria, for carrying on such business"; and, any deficit that the fund may have. The employees who are eligible under the fund contribute 8% of their salaries. The final component of the fund is dividends and interest on the fund's assets.
[3] The trial court awarded Matthews $245.26 a week in supplemental earnings benefits. Nugent was awarded $248.30 a week in supplemental earnings benefits.
[4] Matthews v. City of Alexandria, 587 So.2d 799 (La.App. 3d Cir.1991); Matthews v. City of Alexandria, 587 So.2d 802 (La.App. 3d Cir.1991); and Nugent v. City of Alexandria, 587 So.2d 803 (La.App. 3d Cir.1991).
[5] Matthews v. City of Alexandria, 602 So.2d 731 (La.App. 3d Cir.1992); Matthews v. City of Alexandria, 602 So.2d 733 (La.App. 3d Cir.1992); and Nugent v. City of Alexandria, 602 So.2d 734 (La.App. 3d Cir.1992).
[6] The court of appeal calculated, based on the fact that Matthews received $301.82 a week in disability ($1307.87 × 12/52), that the City had a credit in the amount of $224.89 ($301.82 × 74.52%). Therefore, the city owed Matthews $20.37 a week in supplemental earnings benefits ($245.26 SEB's less $224.89 credit = $20.37).

The court of appeal calculated, based on the fact that Nugent received $302.74 a week in disability ($1311.89 × 12/52), that the City had a credit in the amount of $225.60 ($302.74 × 74.52%). Therefore, the city owed Nugent $22.70 in supplemental earnings benefits ($248.30 SEB's less $225.60 credit = $22.70).
[7] This section was amended by Act 454 of 1989, effective January 1, 1990, to substitute the word "or" for the word "and" before subsection (d). This was in response to several court decisions, including the trial court's decisions in these consolidated cases, holding that for the statute to apply remuneration must be received from all four sources listed in the statute. Lambert v. Bd. of Trustees Emp. Ret. Sys., 517 So.2d 1282 (La.App. 4th Cir.1987), writ denied, 519 So.2d 771 (La.1988). The amendment has been held to be retroactive and to evidence the true intent of the legislature when the statute was originally passed. Credit is allowed for remuneration from any of the four sources. Blanson v. State, Dept. of Public Safety, 571 So.2d 181 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1142 (La. 1991); Matthews v. City of Alexandria, 587 So.2d 799 (La.App. 3rd Cir.1991), writ granted and remanded 592 So.2d 1285 (La.1992), with the comment that the court of appeal correctly held that the City is entitled to credit for disability benefits paid to the employee in the proportion funded by the City.