673 So.2d 239 (1996)
Janice ROCHON, Plaintiff-Appellee/Appellant,
v.
IBERIA PARISH SCHOOL BOARD, Defendant-Appellant.
No. 95-1370.
Court of Appeal of Louisiana, Third Circuit.
March 27, 1996.
Order Amending Decision in Part and Otherwise Denying Rehearing May 21, 1996.
*241 Jo Ann Nixon, New Iberia, for Janice Rochon.
Michael W. Campbell, New Iberia, for Iberia Parish School Board.
Before PETERS, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a worker's compensation case. On February 27, 1991, claimant, Janice Rochon, was injured while working as a bus driver for the Iberia Parish School Board. The School Board paid Rochon temporary total disability benefits of $124.67 per week through May 18, 1993. On April 4, 1994, Rochon filed this disputed claim, seeking reinstatement of benefits, medical and travel expenses, penalties, and attorney's fees. The hearing officer ruled that Rochon was entitled to temporary total disability benefits through November 15, 1994, and further ordered the payment of medical and travel expenses, penalties of $2,000.00, and attorney's fees of $2,000.00. The parties disagree as to whether the wording of the judgment includes a credit for Rochon's disability retirement payments which began on May 5, 1993. Both the School Board and Rochon have appealed.

Facts and Medical Evidence
Rochon had been employed in various jobs by the School Board since 1970; in 1984 she accepted the position of school bus driver, the job that she held until the date of her accident. She testified that her duties as a school bus driver included two and a half hours of driving each morning and evening as well as the cleaning and maintenance of the bus. Each time she drove the bus, she *242 was required to perform a pre-trip inspection of certain items, such as the battery, the radiator, and the flares.
On the date of the accident, February 27, 1991, Rochon's bus began stalling and stopping. After removing the children from the bus, Rochon climbed onto the front bumper so she could see under the hood. She then lost her footing and fell from the bumper, landing on the pavement on her right side with her right knee underneath her body.
After being examined in a hospital emergency room and by her family physician, Rochon was referred to an orthopedic surgeon, Dr. Harold Hebert, Jr., for complaints of pain in her back, neck, shoulder, and right knee. Dr. Hebert observed moderate effusion in the right knee, but x-rays failed to reveal any fractures of the knee. Dr. Hebert initially believed that the neck, back, and shoulder problems were muscular and that ligaments in the knee were stable. When Rochon failed to improve with conservative treatment, however, the doctor ordered an MRI of the right knee. This test revealed a tear of the posterior horn of the medial meniscus cartilage and a suspected tear of the anterior cruciate ligament. Dr. Hebert performed arthroscopic surgery on March 20, 1991, repairing tears of the anterior cruciate ligament and the posterior corner of the medial meniscus cartilage. During the surgery, he also noted mild chondromalacia (or degeneration) of the patella.
Post-operatively, Dr. Hebert ordered physical therapy and sought to get Rochon more active through the use of crutches, even though he believed that the crutches were aggravating her back and neck pain. He continued to treat her through May 21, 1991, during which time he observed moderate effusion in the knee, limited range of motion, and difficulty in flexion. Dr. Hebert also ordered MRIs of the back and neck, the results of which he described as "basically normal." On her last visit with Dr. Hebert, May 21, 1991, he prescribed another month of physical therapy for the knee, neck, and back.
Rochon testified that she did not improve under Dr. Hebert's care. When she reported this to the compensation carrier, an adjuster scheduled an appointment for her with another orthopedic surgeon, Dr. Michel Heard. Dr. Heard first saw Rochon on May 23, 1991, at which time she reported moderate to severe pain in the right knee, shoulder, arm, and leg, with no improvement from the previous arthroscopic surgery.
Dr. Heard reviewed or ordered several diagnostic tests, including a cervical MRI that revealed a small bulge at C4-5, a bone scan that showed increased uptake in the right knee joint surfaces, cervical and lumbar CT scans that indicated spondylolysis in both areas of the spine, a tomogram that showed a "spondylo" at L5, and an MRI that revealed a tear of the posterior horn of the medial meniscus. In Dr. Heard's opinion, the MRI results were consistent with Rochon's symptoms of pain and popping in the knee.
For approximately two months, Dr. Heard treated Rochon conservatively, prescribing spine blocks and Darvocet for pain. In late July of 1991, he recommended and performed a second arthroscopy in light of Rochon's continued symptoms of internal derangement of the knee. Post-operatively, he started her on physical therapy, recommended that she remain non-weight-bearing, and prescribed Darvocet, Anaprox, Tylenol, Zorprin, and Feldene.
In September of 1991, Dr. Heard ordered cervical and lumbar myelograms and CT scans. These tests revealed a small protrusion at C4-5, a small defect at C5-6 and C6-7, spondylitic changes at L5, and mild stenosis at the two lower levels of the lumbar spine. He continued conservative treatment with spine blocks and medications such as Motrin, Fiorinel, and Darvocet. He suggested a consultation with Dr. Daniel C. Dunlap, a neurologist, who recommended continued treatment with physical therapy, exercises, weight loss, and a referral to a psychiatrist. The psychiatric referral apparently never occurred, and Rochon continued with the physical therapy and medications as prescribed by Dr. Heard.
Throughout this treatment, Dr. Heard consistently stated that Rochon was unable to work. However, the following notation appears *243 in Dr. Heard's office notes of December 5, 1991:
Return to work is approved. I do not see any progressive degeneration or instability of the cervical or the lumbar spine. A recheck in one month is advised. A self exercise program and Motrin is recommended.
On Rochon's next visit, January 21, 1992, Dr. Heard restated his earlier opinion that she was still unable to work. Dr. Heard continued to prescribe Darvocet for pain. He observed some improvement in the knee, but he noted that she still walked with a limp. On February 27, 1992, he performed another arthroscopic surgery, noting that her complaints and another MRI were consistent with degeneration and a tear of the medial meniscus.
In January of 1992, Rochon began treatment with Dr. Earl Washington, Jr., a gastroenterologist, for complaints of severe abdominal pain. Dr. Washington treated Rochon through March of 1995 for short bowel syndrome and peritoneal adhesions, which adhesions he believed were aggravated by the medications prescribed for her neck, back, and knee injuries. In July of 1992, he stated that Rochon suffered from "chronic gastropathy from taking pain medications for her knee and back." On March 5, 1993, Dr. Washington wrote that from a gastrointestinal standpoint Rochon was temporarily disabled and needed to be reevaluated in six months. Dr. Washington believed that as late as March of 1995, when he recommended an endoscopy, Rochon was still suffering from medication-induced gastritis.
On May 5, 1993, Rochon was examined by Dr. Clifton Shepherd at the request of the School Board. Dr. Shepherd assigned Rochon only minimal disability associated with her cervical and lumbar conditions, noting that if the lumbar condition were painful, then she should be restricted from "heavy lifting and strenuous exertional activities." He assigned a five to ten percent impairment of the right lower extremity due to degenerative changes in the medial compartment of the knee, this impairment resulting in restrictions from continuous and excessive squatting, kneeling or climbing. He understood that her previous job required her to drive two and a half hours in the morning and evening, and he believed that she could return to this work. He believed that no further diagnostic testing was necessary, that Rochon had long since reached maximum medical improvement, and that light duty status was appropriate in this case.
The School Board terminated Rochon's benefits on May 18, 1993, based upon this report. Dr. Heard continued to treat Rochon through September of 1994, administering Celestone and Marcain blocks as well as prescribing Elavil, Motrin, Darvocet and Feldene. He sought approval for a consultation with Dr. Jim Cole for pain management and coping skills, but this request was denied. On January 30, 1994 and March 1, 1994, Dr. Heard wrote:
The patient is unable to work medium, regular, heavy, or very heavy duty. Our goal for this patient is to return her to light and sedentary work. The patient has not reached maximum medical improvement.
At the request of the Office of Worker's Compensation, Dr. André Cenac examined Rochon on November 15, 1994. Dr. Cenac believed that she had reached maximum medical improvement, that no further diagnostic testing was warranted, and that light duty status was appropriate in her case. He assigned Rochon a five percent disability to the right lower extremity from the three previous arthroscopies documenting the degenerative medial compartment and mild chondromalacia of the patella. In a subsequent report, he noted that she is left with some residual ligamentous problems and confirmed mild degenerative changes in the knee.
On her own initiative, Rochon applied to Louisiana Rehabilitation Services, a state agency, in May of 1994. In connection with her application, Dr. Heard wrote that Rochon would be a good candidate for training in a position where she did not have to sit more than one to two hours at a time, with no repetitive stooping, bending, twisting, prolonged standing or sitting, and with no lifting more than twenty pounds total, ten pounds *244 repetitively. Dr. Washington believed that her gastrointestinal problems restricted her to working only three times a week. On the basis of these reports, the agency determined that Rochon had severe functional capacity limitations that prevented her from working as a school bus driver. She was accepted for retraining in the agency's paralegal program.

Worker's Compensation Disability Benefits
The School Board contends that the hearing officer erred in extending Rochon's temporary total disability benefits through November 15, 1994; Rochon has also appealed, seeking reinstatement of benefits beyond that date, claiming that she is presently disabled due to her gastrointestinal and orthopedic problems.
The finding of disability in a worker's compensation case is a question of fact that may not be disturbed on appeal in the absence of manifest error. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444; see also Rosell v. ESCO, 549 So.2d 840 (La.1989).
The School Board argues that the hearing officer erred in not accepting Dr. Shepherd's opinion that Rochon could return to her former employment as of May 19, 1993. The School Board further contends that inconsistencies in Dr. Heard's notes render his opinion as to Rochon's disability "incredible."
The hearing officer's decision to credit one physician's testimony over another's is a credibility determination which, in the absence of manifest error or clear wrongness, cannot be reversed on appeal. See Danzey v. Evergreen Presbyterian Ministries, 95-167 (La.App. 3 Cir. 6/7/95); 657 So.2d 491. Upon review of the record, we find no error in the decision to credit Dr. Heard's opinion over that of Dr. Shepherd. Dr. Shepherd's report states that Rochon could return to driving two and a half hours in the morning and evening. As the claimant's testimony established, her job consisted of additional duties that were not mentioned by Dr. Shepherd. Additionally, Dr. Shepherd's report does not take into account Rochon's gastrointestinal problems. Only two months before Dr. Shepherd examined Rochon, Dr. Washington reported that, although not permanently disabled, Rochon was at that time temporarily disabled from a gastrointestinal standpoint and that she should be reevaluated in six months.
We also disagree with the School Board's allegation that Dr. Heard issued conflicting reports to different entities. The one inconsistency in Dr. Heard's notes occurred in December of 1991, before Rochon's entitlement to benefits was in dispute. Dr. Heard's report to Louisiana Rehabilitation Services in June of 1994 that Rochon would be a good candidate for retraining for a position with certain restrictions is similar to his reports in January and March of 1994 that his goal is for Rochon to return to light and sedentary work. Upon review of the entirety of the record, we find no error in the hearing officer's finding that Rochon was temporarily and totally disabled after May 18, 1993.
We do find error in the awarding of temporary total disability benefits through November 15, 1994, the date of Dr. Cenac's report. Dr. Cenac's findings and recommendations on that date are essentially the same as those of Dr. Heard in his report of June 16, 1994. We will, therefore, amend the judgment to provide that Rochon's temporary total disability benefits are awarded only through June 16, 1994. Rochon's claim that she is still totally disabled because of her stomach problems is defeated by her own testimony that she is presently able to run errands for her attorney's firm, participate in the firm's retreats, travel by car to New Orleans and Houston, and attend her paralegal training sessions.
Three doctors who examined Rochon agreed that she can perform only light or sedentary work. Dr. Heard and the rehabilitation agency concluded that Rochon could not return to her former occupation as a bus driver. Yet, neither the parties nor the hearing officer considered whether Rochon would be entitled to supplemental earnings benefits at the conclusion of her temporary total disability.
To recover supplemental earnings benefits, an employee must prove by a preponderance of the evidence that he is unable *245 to earn wages equal to ninety percent or more of the wages he earned at the time of his injury. La.R.S. 23:1221(3)(a). Once the employee meets this burden of proof, the burden then shifts to the employer to show that the employee is physically able to perform a certain job and that the job was offered to the employee or was available within the employee's or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i). See also Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989). The employee shall be deemed incapable of performing the employment offered, tendered, or otherwise proven available to him if he establishes by clear and convincing evidence that solely as a consequence of substantial pain he cannot perform such employment. La.R.S. 23:1221(3)(c)(ii).
In post-trial briefs, the School Board suggested that Rochon has not suffered a loss in earning capacity because any earnings at a minimum wage, light duty job would equal her previous base salary of $690.00 per month and because Rochon chose to attend paralegal classes rather than seek other employment. However, reports in the rehabilitation records suggest that Rochon is not capable of full-time employment, and her extensive prescriptions for pain medication are well-documented. We also note that although Rochon testified that her base salary was $690.00, her pay stubs show that she received additional sums. Finally, the fact that Rochon chose to attend paralegal classes should not affect her entitlement to supplemental earnings benefits if she has sustained a loss of earning capacity. See Tassin v. Cigna Ins. Co., 583 So.2d 1222 (La.App. 3 Cir.1991), where this court awarded supplemental earnings benefits to a claimant while he attended college.
We find that the record does not contain sufficient information for this court to determine whether Rochon is entitled to an award of supplemental earnings benefits; we will, therefore, remand the case for an evidentiary hearing on this issue. See Schmitt v. City of New Orleans, 632 So.2d 367 (La. App. 4 Cir.1993).

Penalties and Attorney's Fees
The School Board next assigns as error the hearing officer's awards of $2,000.00 in penalties and $2000.00 in attorney's fees. In her appeal, Rochon contends that these amounts are inadequate.
La.R.S. 23:1201(E) subjects the employer or insurer to statutory penalties for any unpaid compensation or medical benefits, unless the employer or insurer reasonably controverts the employee's right to those benefits. "The employee's right to such benefits will be deemed `reasonably controverted' if the employer or insurer had a reasonable basis for believing that medical expenses and indemnity benefits were not due the employee." Danzey, 95-167, at p. 12; 657 So.2d at 497-98. La.R.S. 23:1201.2 authorizes an award of attorney's fees when the employer or insurer's failure to pay a claim within sixty days of written notice is found to be arbitrary, capricious, or without probable cause. Termination of benefits will not be considered arbitrary and capricious if it is based upon competent medical evidence. Harris v. The Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, writ denied, 95-1178 (La.6/23/95); 656 So.2d 1020.
The School Board's decision to terminate benefits as of May 18, 1993, was based upon the report of Dr. Shepherd. We have already determined that Dr. Shepherd's opinion was based upon incomplete information about Rochon's prior job duties and did not take into account Dr. Washington's diagnosis regarding Rochon's gastrointestinal problems. Nonetheless, we note that Rochon herself provided the information about her former job and that Dr. Washington's report on Rochon's disability was not sent to the School Board but instead to the Teachers' Retirement System of Louisiana. When we consider the length of time benefits were paid in this case and the total amount of medical expenses provided, we cannot conclude that the employer's reliance upon Dr. Shepherd's report was arbitrary and capricious or that such action subjected the employer to statutory penalties.

*246 Credit for Disability Retirement Benefits
The parties stipulated that Rochon began receiving disability retirement benefits from the Teachers' Retirement System of Louisiana in the amount of $606.00 per month on May 5, 1993. They disagree as to whether the hearing officer's judgment awarded the School Board a credit based upon the receipt of these benefits. After ordering Rochon's entitlement to temporary total disability benefits from February 27, 1991, the date of the accident, through November 15, 1994, the date of Dr. Cenac's report, the judgment drafted by the hearing officer provided:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the employer, Iberia Parish School Board, shall be given credit for all medical expenses, medication expenses and disability benefits that have already been paid to the claimant, according to law.

(Emphasis added.)
Because the judgment ordered the payment of benefits from the date of the accident rather than the date benefits were terminated, we can understand any confusion the parties may have had as to whether the credit in the above paragraph refers only to the worker's compensation benefits already paid or also to the disability retirement benefits. Nonetheless, we find the judgment sufficiently broad to include a credit both for the worker's compensation benefits paid by the School Board through May 18, 1993, and for the disability retirement benefits from the Teachers' Retirement System of Louisiana. We further find that such a credit was properly awarded.
La.R.S. 23:1225(C)(1) provides in part:
C. (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
. . . .
(c) Benefits under disability benefit plans in the proportion funded by an employer.
. . . .
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.
The above section allows a credit for benefits under "disability benefit plans" in the proportion that those benefits are funded by the employer; the credit is not permitted for tenure-based retirement benefits. Cousins v. City of New Orleans, 608 So.2d 978 (La.1992). "The employer has the burden of proving both the entitlement to and amount of the credit." Matthews v. City of Alexandria, 619 So.2d 57, 60 (La.1993).
In the instant case, Rochon testified that she had vested in the Teacher's Retirement System of Louisiana after ten years, but on the date of her accident she had only "nineteen point something" years of service. She did not apply for her disability benefits until February of 1993, approximately two years after the accident. The record does not reveal whether she received any additional service credit during this time. However, Rochon testified that upon retirement she elected the disability option of her plan because it provided benefits of $606.00 per month, whereas the retirement option would have paid her only $310.00 per month. The School Board contributed two-thirds of the funds that were paid into the plan on Rochon's behalf.
In Cousins, the supreme court held that the employer did not prove the employee was receiving "disability" retirement benefits where the employee was eligible for regular retirement on the date of his accident and the disability benefits that he elected to receive were identical to the plan's regular retirement benefits. The court reasoned:
There is no compelling reason for holding that plaintiff forever forfeited his vested right to receive retirement benefits when he elected to take the equal amount of disability benefits. Plaintiff's technical election between pension plans did not have any binding effect on the rights of any party. Both plans were part of the same statutory scheme for firefighters and *247 were funded from the same pool. There would have been no detriment to the Fund if plaintiff had transferred from receiving disability benefits to receiving the retirement benefits to which he was equally entitled, as long as he did not receive both at the same time.
Id. at 981.
In Domingue v. Hartford Ins. Co., 568 So.2d 221 (La.App. 3 Cir.), writ denied, 571 So.2d 654 (La.1990), the employer was also denied a credit against its compensation obligation where the employee was eligible for "early retirement" under the plan (although she had not reached the normal retirement age of sixty-five) at the time of her accident. Even though her disability benefits were "somewhat higher" than the early retirement benefit until she reached her normal retirement date, the court found that "the total remained essentially a retirement benefit based on number of years of service." Id. at 225.
In Matthews, 619 So.2d 57, however, the supreme court approved the offset where "[n]either plaintiff had served the requisite amount of time and therefore only qualified for retirement based on their disability...." Id. at 60.
Clearly, Rochon qualified for and the plan was obligated to pay the additional benefits solely because of her disability. Although Rochon may have later acquired the service credit needed for regular retirement, she was apparently not eligible for her regular retirement benefits on the date of her accident. Under Matthews and Cousins, we find that Rochon was receiving "benefits under a disability benefit plan" as contemplated by Section 1225(C)(1)(c). The School Board is entitled to the credit as prayed for.

Remaining Issues
In her remaining assignments of error, Rochon contends that the hearing officer erred in failing to rule on her claim that she was denied her choice of treating physician and in failing to make a specific finding concerning the relationship of her stomach problems to her accident such that there is no clear understanding of the employer's responsibility for these expenses.
Rochon contends that the School Board in effect denied her a choice of a treating physician by denying certain medical expenses requested by Dr. Heard after the termination of her benefits. We disagree. From the record, it appears that these disputed expenses requested by Dr. Heard were not for medical treatment but were for repeating diagnostic testing that had been performed in the past. We find no error in the denial of this claim.
Regarding Rochon's stomach problems, we note that in written reasons the hearing officer stated, "It is the judgment of the Court that there is a causal connexity between the stomach problems and the original injury and these medicals are compensable." Further, the judgment of the hearing officer provides that the claimant is "entitled to the payment of all medical bills, medication expenses and transportation expenses from the employer." Rochon testified that the School Board has failed to pay for her office visits to Dr. Washington but has paid for most of his prescriptions, except for a few that were filled at a local pharmacy. We interpret the judgment to require payment of Dr. Washington's office visits, treatments and prescriptions that are related to her medication-induced gastritis. However, the current state of the record prevents us from making a more precise determination. We will, therefore, remand for an evidentiary hearing on whether all of the claimed expenses from Dr. Washington's care are compensable.

Decree
For the above reasons, that portion of the judgment of the Office of Worker's Compensation which awards claimant, Janice Rochon, temporary total disability benefits is affirmed but amended to provide that such benefits shall cease on June 16, 1994; that portion of the judgment which awards claimant, Janice Rochon, penalties and attorney's fees is reversed; and the judgment is clarified to reflect that the employer, the Iberia Parish School Board, is entitled to a credit, according to law, for the claimant's receipt of disability retirement benefits. The case is remanded *248 for a determination of whether the claimant is entitled to supplemental earnings benefits after June 16, 1994 and which of Dr. Washington's office visits, treatments, and prescriptions are compensable. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally to the claimant and the employer.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART AND REMANDED.

On Rehearing
For the first time on rehearing, Rochon argues that she is entitled to an award of temporary total disability benefits pursuant to La.R.S. 23:1226(F) while she is undergoing retraining as a paralegal through a state vocational program. As part of the rehabilitation provisions of the compensation act, that statute states:
F. Temporary disability benefits paid pursuant to R.S. 23:1221(1) shall include such period as may be reasonably required for training in the use of artificial members and appliances and shall include such period as the employee may be receiving training or education under a retraining program pursuant to this Section.

(Emphasis added.)
It is unclear if Rochon ever requested rehabilitation services from her employer; however, on her own initiative she enrolled in a paralegal retraining program sponsored by the state after her treating orthopedist, more than once, urged that she receive vocational rehabilitation and the professionals at Louisiana Rehabilitation Services determined that she had severe functional capacity limitations.
La.R.S. 23:1226(A) provides that an employee "shall be entitled to prompt rehabilitation services" when a work-related injury prevents him from earning wages equal to those earned prior to the injury. Because the provisions of La.R.S. 23:1226, et seq., are mandatory, an employee need not specifically request vocational rehabilitation. Smirnov v. Alexandria Coca-Cola Bottling Co., 95-205 (La.App. 3 Cir. 10/4/95), 663 So.2d 227, writ denied, 95-2689 (La. 1/12/96), 666 So.2d 323. Further, in Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, the supreme court held that an employee's pursuit of meaningful rehabilitation should not entirely relieve the employer of its obligation under the statute. In Freeman, the supreme court awarded the claimant temporary total disability payments under section 1226(F), not to exceed 52 weeks, when the claimant enrolled in college after her employer failed to provide appropriate rehabilitation. See also Thibodeaux v. Robinswood School, 93-1130 (La.App. 3 Cir. 4/6/94), 635 So.2d 585, writ denied, 94-1188 (La. 6/24/94), 640 So.2d 1355.
Before Rochon is entitled to benefits under section 1226(F), she must prove, under section 1226(A), that her work-related injury precludes her from earning wages equal to wages earned prior to the injury and, under section 1226(B), that short-term or long-term retraining is the first appropriate option of those listed that meets the statute's goal of returning a disabled worker to work with a minimum of retraining. We find that such questions are best addressed by the trier of fact. Accordingly, our original opinion is amended to provide that on remand the hearing officer is also to determine whether Rochon is entitled to temporary total disability benefits under La.R.S. 23:1226(F), beyond the date of her temporary disability, in accordance with the views expressed herein.
In all other respects, the application for rehearing is denied.