681 So.2d 12 (1996)
Lyndon LYTLE
v.
CITY OF NEW ORLEANS THROUGH the NEW ORLEANS FIRE DEPARTMENT.
No. 96-CA-0039.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1996.
*13 Frank A. Bruno, New Orleans, for Plaintiff.
Avis Marie Russell, City Attorney, Neil J. Kohlman, Assistant City Attorney, New Orleans, for Defendant.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
LANDRIEU, Judge.
This is an appeal by the City of New Orleans of a judgment awarding the claimant, Lyndon Lytle, supplemental earning benefits (SEB) under the worker's compensation law as well as a 12% penalty on unpaid compensation and $2,500.00 in attorney's fees.
On June 4, 1988, after more than 20 years of service as a fireman in the New Orleans Fire Department, Lyndon Lytle, age 52, injured his right knee when he fell into a hole while on the job. Lytle never returned to work as a fireman, and the City soon began paying worker's compensation benefits to him in the amount of $262.00 weekly. Shortly afterwards, Lytle began receiving a service-connected disability pension reflective of his 20 years as a fireman.
In October 1989, the City reduced Lytle's compensation benefits to $30.18 each week, offsetting Lytle's receipt of disability benefits pursuant to La.Rev.Stat.Ann. § 23:1225(C) (West 1985). Lytle sued the City for reinstatement of his full worker's compensation benefits. The trial court awarded Lytle the maximum benefits along with a penalty and attorney's fees.
The City appeals the trial court's judgment, arguing that the court erred in finding that Lytle was entitled to SEB. Lytle, the City claims, provided no proof of disability as a result of the alleged accident. Moreover, the evidence, the City claims, suggests that any long term disability which Lytle might have results from a non-compensable preexisting condition.
*14 Supplemental earnings benefits, the requirements for which are set forth in La. Rev.Stat. Ann. § 23:1221(3) (West 1985 & Supp.1996), are designed to compensate an injured employee for his lost wage-earning capacity resulting from a work-related accident. Dyer v. Gab Business Services, 613 So.2d 801 (La.App. 4th Cir.), writ denied, 617 So.2d 939 (La.1993). Like all provisions of the worker's compensation law, the provisions governing SEB must be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La. 1989).
To establish entitlement to SEB, the claimant must prove by a preponderance of the evidence that his work-related injury has resulted in his inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury. Once the claimant meets this initial burden of proving entitlement to SEB, the burden shifts to the employer to prove the employee is earning less than he is physically able to earn. Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330, 335; Schmitt v. City of New Orleans, unpub., 95-1903, 676 So.2d 1205 (4th Cir. 7/31/96).[1]
Where, as in this case, the employee suffered from a pre-existing medical condition, he may still prevail if he proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Peveto v. WHC Contractors, 93-1402, (La.1/14/94), 630 So.2d 689, citing Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324 (La.1985).
At the trial in this case, the doctors' medical reports were admitted into evidence in lieu of their live testimony. There is no dispute that Lytle's right knee was initially injured twenty years before the 1988 incident in a motorcycle accident. When the problems with his knee persisted for several years, he underwent surgery.
The record shows that on the night of June 4, 1988, Lytle, while moving a hose to fight a fire, fell into a hole that he had not seen because there was no light. Lytle saw Dr. Ed Ward and Dr. John Montz in the weeks following this incident. In his report of June 30, 1988, Dr. Ward diagnosed a strain with effusion of Lytle's right knee, a sprain in his right ankle, and a cervical strain. Dr. Ward treated Lytle with medication, heat treatment and physical therapy. Dr. Ward believed that Lytle would never be able to return to his normal duties as a fireman.
Dr. Montz, who Lytle saw before and after this injury, told Lytle six months before his injury that he may consider a different line of work where he would not have to climb. Dr. Montz, however, reported after the injury that Lytle's job as a fireman, i.e. climbing a ladder and carrying anything over 20 pounds, would aggravate his knee problems or would cause further damage.
Lytle was also seen by Dr. Edmund Landry, Jr. approximately four months after his injury. Dr. Landry diagnosed degenerative osteoarthritis of the right knee with associated ligament instability. He believes that Lytle's right knee makes him unsuitable for activities requiring running, jumping, climbing, squatting, prolonged standing or walking, and that Lytle is unable to perform activities of full duty for the fire department.
Dr. Jack Ruli reviewed the medical reports from Dr. Montz and Dr. Ward and believed that, in light of their opinions, Lytle should be considered totally and permanently disabled from performing fire duty.
At trial, Lytle testified that he had no pain in his knee, just stiffness. He said that if he walks too far too fast, he has pain in his knee.
The medical reports, along with Lytle's testimony, provide sufficient, although minimal, proof of an work-related injury which aggravated Lytle's previous knee problems *15 to produce a disability requiring Lytle to stop working as a fireman. The City provided no contradictory evidence. Hence, we find that Lytle sustained his initial burden of proof. Now we must determine whether the parties carried their respective burdens of proof as to Lytle's earning capacity.
The record reveals that Lytle worked as a firefighter basically all of his working life. His average weekly wage at the time of his injury was $538.32. As a teenager he worked in a bakery. As a young man, he was in the Army for several years, and he worked part-time as a driver for Coca-Cola and as an Emergency Medical Technician. Lytle obtained his GED while he was in the Army.
To determine if an injured employee has made out a prima facie case of entitlement to SEB, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage. Smith v. Louisiana Dept. of Corrections, 93-1305, (La.2/28/94), 633 So.2d 129. In this case, considering Lytle's physical restrictions, coupled with his isolated work experience, Lytle has shown that he is unable to earn ninety percent or more of his preinjury wages due to his fall in June 1988.
The burden of proof then shifted to the City, but the City in this case offered no evidence that Lytle was able to perform work that was offered to him or was available to him in his or its community or reasonable geographic region. Therefore, we conclude that Lytle proved his entitlement to SEB, and we find no error in the trial judge's award of SEB to him.
In its second assignment of error, the City claims that the trial judge erred in finding that Lytle had not "retired" within the meaning of La.Rev.Stat.Ann. § 23:1221(3)(d)(iii) (West 1985). A worker retires for purposes of the Worker's Compensation Act when the worker withdraws from the work force or begins to draw old age social security benefits, whichever comes first. Allen v. Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123, 127; Schmitt, supra. Under La.Rev.Stat. § 23:1221(3)(d)(iii), SEB shall be terminated:
When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
Lytle admits that he has not looked for another job since he left the fire department in 1988. He has not applied for any jobs, gone for any interviews, written letters or made any phone calls in pursuit of employment. Lytle described an average day:
... I get up in the morning, get the kids off to school, wake them up. I guess I make, around the house, I might do a few things like wash the dishes, something like that. Sometimes I go out to the fishing pier and try and catch something. And that's about it. I go visit my neighbor next door.
Lytle recognizes that his only job restriction imposed by his doctors is that he can no longer be a firefighter. Lytle testified that he is "not really retired," yet the record shows that he listed himself as retired on income tax and patient information forms.
The trial judge used the decision in Allen, supra, to conclude that Lytle had not retired. The worker in Allen, however, was in fact working full time in a minimum wage job. He clearly had not withdrawn himself from the work force.
In this case, Lytle's testimony and the record supports a finding that he has indeed withdrawn from the work force. The trial judge was clearly wrong in concluding otherwise. Hence, Lytle's entitlement to SEB is limited by statute to 104 weeks.
In its third assignment of error, the City argues that the trial judge erred in awarding penalties and attorney's fees to Lytle. We agree.
Under the worker's compensation law, an assessment of penalties and attorney's fees is improper unless the employer had no reasonable basis to controvert the employee's right to benefits. In this case, when the City reduced Lytle's compensation benefits by the amount he received for his service-based disability *16 pension, Cousins v. City of New Orleans, 608 So.2d 978 (La.1992) had not been decided, and at that time, there was a legitimate question about when the City could reduce compensation benefits. After Cousins, a question existed as to the retroactivity of that decision until Dupre v. City of New Orleans, 94-1185 to 94-1196, (4th Cir. 12/28/94), 648 So.2d 503.
When the City could have reinstated full benefits to Lytle after Dupre, Lytle gave every indication that he had retired, and hence, was limited in the length of time he could obtain benefits. The City was not arbitrary and capricious in waiting for this issue to be resolved. The trial judge in this case was wrong to assess penalties and attorney's fees based on the Cousins decision.
Finally, Lytle answered the City's appeal, asking for additional attorney's fees and penalties for their preparation in response to this appeal. We deny this request.
Accordingly, we affirm the portion of the judgment that found Lytle entitled to SEB, but reverse the trial judge's finding that Lytle had not retired and the award of penalties and attorney's fees. Hence, the City is responsible for 104 weeks of full compensation benefits to Lytle, with credit for any amounts already paid. All costs of this appeal are assessed equally to Lytle and the City.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] In this case, the trial judge, citing Pinkins v. Cardinal Wholesale Supply Inc., 619 So.2d 52 (La.1993), determined that it was the employer's burden to establish earning capacity when, as in this case, the employee is not working or earning less that he was earning at the time of the job-related injury. Because Pinkins was limited by the Court to its facts, we will nevertheless determine whether Lytle proved both a work-related injury and a resulting inability to earn wages equal to ninety percent of his wages as a fireman.