883 So.2d 439 (2004)
William NOTO
v.
The CITY OF NEW ORLEANS FIRE DEPARTMENT.
No. 2004-CA-0472.
Court of Appeal of Louisiana, Fourth Circuit.
September 1, 2004.
*441 Robert H. Urann, Robein, Urann & Lurye, Metairie, LA, for Plaintiff/Appellant.
Roger A. Javier, Courtenay, Hunter & Fontana, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO JR.).
EDWIN A. LOMBARD, Judge.
This is an appeal from a ruling of the Office of Workers' Compensation (OWC) finding: 1) that the claimant was not entitled to temporary total disability (TTD) benefits due to his retirement from the workforce, and 2) that the employer was entitled to reduce the claimant's supplemental earnings benefits (SEB). For the reasons assigned, we affirm.

Relevant Facts and Procedural History
Claimant/appellant, William Noto (Noto), began his employment with the City of New Orleans (the City), as a firefighter on September 20, 1981. On May 28, 2001, Noto suffered an on the job injury to his right knee. Both Dr. George Chimento, Noto's treating physician, and Dr. Gordon Nutik, the City's medical expert, agreed that Noto could not return to his job as a firefighter. Noto was released to medium duty work with restrictions to avoid squatting and climbing.
The City began paying Noto indemnity benefits at the maximum compensation rate of $388.00 per week. On April 5, 2002, a vocational assessment was conducted and possible jobs were identified for Noto at an average rate of $11.28 per hour. On April 21, 2002, benefits were reclassified to SEB but were paid at the same maximum rate of $388.00 per week. On October 1, 2002, Noto's SEB was reduced to $612.79 per month based on the jobs identified through the vocational assessment and approved by Dr. Chimento.
The matter went to trial on September 24, 2003, before OWC judge, Sean A. Jackson. The parties stipulated that the only issues for trial were (1) whether or not the jobs were "available" if Noto applied for, but was not successful, in obtaining any job offers from the employers identified through the labor market survey[1] and (2) *442 whether or not Noto had retired. In the judgment rendered on January 8, 2004, the OWC found that the claimant was retired pursuant to the provisions of La. Rev. stat. 23:1221(3) and that employer was entitled to reduce the claimant's weekly benefits from $388.00 per week in Temporary Total Disability benefits to $612.79 per month in Supplemental Earnings Benefits because there was work available that the claimant was physically able to perform in his community or geographic region. This appeal followed.

Standard of Review
In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737 (citation omitted). Under this standard of review, an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). After reviewing the entire record, the appellate court must determine if the factfinder's conclusion was reasonable. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Rosell, supra.

Discussion
Noto asserts two errors on the part of the OWC judge. First, that the OWC judge erred in finding that Noto had retired. Second, that the OWC judge erred in holding that the City was entitled to reduce Noto's SEB from $388.00 per week to $612.79 per month.

Assignment of Error No. 1
The OWC judge determined that Noto had retired from the workforce pursuant to La.Rev.Stat. 23:1221(3), which provides in pertinent part:
(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(iii) When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
"A worker retires under La.Rev.Stat. 23:1221(3)(d)(iii) when: (1) the worker withdraws from the work force; or (2) the worker draws old age social security benefits, whichever comes first." Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123, 126-127. "Retirement" occurs when the claimant "withdraws from the workforce." Randazzo v. Boh Brothers Construction Co., 01-1953 (La.App. 4 Cir. 3/27/02), 814 So.2d 671, 674-675. (citation omitted). "[A]n employee who expresses his intention to both retire, or stop working, and not look for other employment and who makes no effort to find another job has retired within the meaning of La.Rev.Stat. 23:1221." Randazzo v. Boh Brothers Construction Co., 01-1953 (La.App. 4 Cir. 3/27/02), 814 So.2d 671, 675, citing Lytle v. City of New Orleans Through New Orleans Fire Department, 96-0039, p. 5 (La.App. 4 Cir. 9/11/96), 681 So.2d 12, 15.
*443 In this case, Noto testified in his deposition on May 22, 2003, that the only jobs he applied for were the eight identified through the vocational assessment. These jobs were identified for Noto in April and May of 2002 and approved by Dr. Chimento on August 26, 2002, but Noto never received an offer of employment. Noto further stated in his deposition that he did not apply for any jobs on his own, and that he was not currently looking for a job, in spite of the fact that he thought he was physically capable of performing some work. When asked why he was not currently looking for a job, his answer was, "no reason."
At trial, Noto's testimony regarding his job search remained virtually the same except that he now claimed that his reason for not looking for a job was because he was scared and lacked confidence. Exhibits presented at trial indicate that Noto told both Dr. Nutik and the vocational rehabilitation counselor that he intended to retire. The only evidence in the record that Noto intended to return to work, or even wanted to return to work, was his trial testimony that he had recently enrolled in a real estate appraisal course.[2]
After considering the testimony and the evidence presented, the OWC judge made a factual determination that Noto had indeed retired from the workforce pursuant to La.Rev.Stat. 23:1221(3). The OWC judge had an opportunity to hear Noto's testimony, consider his credibility, and evaluate his efforts in finding a job. After our review of the record, and in considering the standard of appellate review, we cannot say that the OWC judge was clearly wrong in concluding that Noto had retired from the workforce.

Assignment of Error No. 2
Noto argues that the OWC judge erred in finding that the City was entitled to reduce his weekly benefits because there was work available that Noto was physically able to perform. Specifically, Noto maintains that the OWC judge erred in concluding that suitable work was available to him and in adopting $11.28 as the average wage of the identified jobs as the basis for Noto's earning capacity.
The jobs identified for Noto involved office positions with various finance companies and homesteads. The basis for selecting employment opportunities in the financial field was Noto's representation that he worked as the assistant manager for a finance company prior to being a firefighter. Noto contends that a job in the finance industry is not suitable because his experience in that field dates back twenty-five years. Other than the finance company experience, Noto testified that he owned, operated and leased-out several cabs in the past.
Under the provisions of La.Rev.Stat. 23:1221(3)(a), an employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's *444 community or reasonable geographic region. La. Rev. Stat 23:1221(3)(c)(i) (emphasis added); Daigle, 545 So.2d at 1009. Actual job placement is not required. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 at p. 9 (La.7/1/97), 696 So.2d 551, 556.
In Banks, the Louisiana Supreme Court set forth a minimum standard that an employer must meet in order to defeat an employee's claim for SEB by proving job availability. 96-2840, pp. 10-11, 696 So.2d at 557. To prove job availability, an employer must establish, by competent evidence, the following: (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and (3) an actual position available for that particular job at the time that the "claimant received notification of the job's existence. Id. A suitable job in this context is one that the claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education unless, of course, the employer or potential employer is willing to provide any additional training or education." Id.
Applying these standards to the present case, we conclude that the City met its burden of proving "job availability" for Noto. As noted above, jobs were identified in area in which Noto had some prior experience, the finance company field and the job descriptions provided for these positions indicate that most of the employers offered training and did not require specialized skills.
We pretermit any discussion on Noto's argument that the OWC judge erred in adopting the average wage of identified jobs at $11.28. It is clear from the stipulations entered into at trial that the average rate of pay for the jobs identified was not in dispute at trial. Specifically, it was agreed that the only issues presented at trial were whether or not there were jobs available to Noto and whether or not Noto had retired.

Conclusion
For the foregoing reasons, we do not find that the judgment of the OWC was clearly wrong or manifestly erroneous. Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Notably, although the parties stipulated that this was an issue at trial, under the clear language of the statute availability of a job in the SEB context is not dependent on whether the claimant was successful in obtaining a job identified through the labor market survey but whether the employer met the burden of proving that the claimant was physically able to perform a job which was either offered to him or available to the employee in his or the employers community or reasonable geographic region. See La.Rev.Stat. 23:1221; Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008-1009 (La.1989)
[2] Notably, Noto enrolled in the course less than two weeks prior to trial.