657 So.2d 320 (1995)
CITY OF NATCHITOCHES, Plaintiff-Appellee,
v.
Huey P. WILLIAMS, Defendant-Appellant.
No. 94-1411.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1995.
*321 Christopher Richard Philipp, Lafayette, for City of Natchitoches.
George Arthur Flournoy, Alexandria, for Huey P. Williams.
Before DECUIR, AMY and SULLIVAN, JJ.
AMY, Judge.
This case arises out of an accident which injured Huey P. Williams, an employee of the City of Natchitoches (hereafter "the City"). Mr. Williams appeals the worker's compensation hearing officer's award to the City of a disability retirement credit to be applied against the worker's compensation benefits the City must pay Mr. Williams.

FACTS
Mr. Williams was injured in a work-related accident on February 1, 1988. He had not yet reached the age at which he would be eligible for normal retirement benefits from the Municipal Employees Retirement System (hereafter "MERS"), but, by virtue of his disability and the length of his employment with the City, he was eligible to have MERS pay him disability retirement benefits. From October 1, 1988, the effective date of his disability retirement, he received disability retirement benefits along with worker's compensation benefits from his employer.
The City brought suit to obtain an offset for the disability benefits it had contributed to MERS, and the hearing officer found that the City was due an offset of 58% of Mr. *322 Williams' disability retirement benefits retroactive to the date of judicial demand.[1] Mr. Williams appeals this award, alleging two assignments of error: first, that the hearing officer incorrectly awarded the City credit for its contribution to Mr. Williams' disability retirement fund; and second, that the percentage rate used by the hearing officer to calculate the disability retirement credit was incorrect.

CREDIT FOR CONTRIBUTION FOR DISABILITY BENEFITS
Mr. Williams first argues that the City failed to give actuarial proof of which percentage of its contributions to his MERS account funded disability benefits and which portion funded retirement benefits; this failure, he contends, prevents the City from receiving a setoff.
The reduction of compensation benefits is provided for by La.R.S. 23:1225(C)(1).[2] Recognizing that an employee who suffers injury sufficient to cause loss of wages and who consequently receives worker's compensation benefits may also be receiving benefits from other sources, the legislature created the statute to coordinate wage-loss benefits, preventing duplication of payments from specifically enumerated sources. Matthews v. City of Alexandria, 619 So.2d 57 (La.1993); Cousins v. City of New Orleans, 608 So.2d 978 (La.1992).
An employer seeking a reduction in the worker's compensation he must pay is required to prove both that he is entitled to a credit under La.R.S. 23:1225(C)(1) and the amount of that credit. Matthews, 619 So.2d 57; Vallery v. State, 605 So.2d 1380 (La.App. 3 Cir.), writ denied, 609 So.2d 225 (La.1992). In order to receive a credit for disability benefits, the employer must first prove that the employee is in fact receiving disability retirement benefits. Matthews, 619 So.2d 57. Mr. Williams' assignments of error speak only to the amount of the credit. The City's entitlement to a credit, which was proven in the trial court, is not at issue on appeal.
While reduction in compensation benefits is allowed for "benefits under disability benefit plans in the proportion funded by the employer," an employer may not use the employee's receipt of normal retirement benefits as grounds for reduction since such benefits are not among those sources of remuneration from which the statute permits reduction. La.R.S. 23:1225(C)(1)(c). Absent an agreement to the contrary, the total of all wage-loss benefits a claimant may receive from those sources listed in the statute is capped at sixty-six and two-thirds percent of the claimant's average weekly wage at the time of his accident. La.R.S. 23:1225(C)(1).
As a State retirement system, MERS is required by the Louisiana Constitution to be actuarially sound. La.Const. art. X, § 29.[3] In Vallery, this court considered the *323 proof which an employer must submit to establish entitlement to an offset under an actuarially-sound system. Vallery, a state employee, was injured during the course and scope of her employment. She began receiving monthly disability retirement benefits from the Louisiana State Retirement System as well as worker's compensation benefits. At trial, the State introduced evidence that it had made 54% of the contributions to Vallery's retirement fund and that she had made 46% of the contributions. The State argued that it was entitled to reduce the worker's compensation benefits which it was paying to Vallery by 54%, the percentage it had contributed. The Vallery court concluded that the State could not offset the entire amount which it had paid into the system on Vallery's behalf. Even though Vallery was not eligible for normal retirement, this court determined that payments made by the employer were comprised of contributions funding both disability benefits and normal retirement benefits. In that case, the court concluded that the State had not proven that it was entitled to reduce the compensation benefits which it was paying to Vallery because there was no evidence submitted as to "what part of Vallery's monthly disability retirement benefit was disability funded, and what part was retirement funded.... It is only for its proportion of funding of the disability benefit that the State is entitled to a reduction. The State may not lump its funding for retirement benefits and disability benefits together and claim a reduction for the full amount." Id. at 1383.
Thus, in Vallery, this court required an employer who has made contributions to an actuarially-sound system and who desires to offset compensation benefits to "produce[] expert actuarial testimony to establish the proportion of its funding of [the employee's] disability benefit." Vallery, 605 So.2d at 1383 (emphasis added). Vallery placed the focus of the analysis on the categorization of the money the employer puts into the employee's account, not of that paid out. See also Nugent v. Dept. of Health & Human Res., 617 So.2d 1347 (La.App. 3 Cir.1993); Spinks v. Dept. of Health & Human Resources, 605 So.2d 1384 (La.App. 3 Cir.1992).
Subsequent to Vallery, the Louisiana Supreme Court took up the question of the employer's burden of proof when seeking an offset under La.R.S. 23:1225(C)(1). In Matthews, 619 So.2d 57, the supreme court held that an employer proved the amount of credit due it first by showing that the employee was receiving disability benefits rather than normal retirement benefits and then by proving the proportion of funds contributed by the employer to those contributed by the employee. The supreme court focused on the type of benefits the employee received, i.e., on how the funds contributed were ultimately expended in the case of the Matthews claimants. Although Matthews involved a non-actuarially-sound system, the supreme court did not specifically limit its rule to such systems. Our supreme court in that decision did not remark on the correctness of Vallery, noting only that the cases differed factually because of the types of retirement systems involved.[4]
The statute which provides for reduction, La.R.S. 23:1225(C)(1), does not differentiate between retirement systems which are actuarially sound and those which are not. It states simply that "[i]f an employee receives remuneration from ... [b]enefits under disability benefit plans in the proportion funded by an employer[,] ... then compensation benefits under this Chapter shall be *324 reduced...." Since neither the statute nor the supreme court's decision in Matthews offer any basis for requiring a different burden of proof based on a system's actuarial soundness, we conclude that Vallery, Spinks, and Nugent have been superseded by Matthews. We therefore apply the Matthews analysis to the instant case.
The supreme court found that the plaintiffs in Matthews, who were eligible for disability retirement but not for normal retirement, were receiving benefits which were "not retirement benefits based on length of service, and are strictly disability benefits as described in LSA-R.S. 23:1225(C)(1)(c)." 619 So.2d at 60. In the case now before us, Mr. Williams is receiving disability retirement benefits. This is because Mr. Williams, through his own action, purposefully elected to receive disability retirement benefits instead of waiting to receive his normal retirement. Whether he chooses disability retirement or normal retirement, the benefits were paid from the same source. By choosing disability retirement, Mr. Williams necessarily precluded himself from receiving a normal retirement and, additionally, subjected himself to the possible consequences of his election, the most prominent of which is the City's exercise of its statutory right to seek an offset.
In the instant case, evidence was given showing that all of the contributions made by the City to Mr. Williams' MERS account were used to provide disability benefits; none of the City's contributions were used for normal retirement benefits. Mr. Williams was eligible only for disability retirement benefits because he had not reached retirement age.[5] Therefore, as with the Matthews plaintiffs, Mr. Williams' benefits "are strictly disability benefits."
With it shown that Mr. Williams received disability retirement benefits, the City must next prove the proportion of funds it contributed to Mr. Williams' MERS account. At trial the City introduced the deposition of Shirley Callender into evidence. Ms. Callender, a disability clerk retirement analyst with MERS, testified that the entire amount put into the fund both by the City and Mr. Williams was used in payment of the disability benefit plan. The hearing officer found that Ms. Callender's uncontradicted testimony constituted adequate proof that the City was allowed to offset the entire percentage it contributed. We agree.
Under the plain language of La.R.S. 23:1225(C)(1) and the logic advanced by Matthews, once the City showed that Mr. Williams was receiving disability benefits rather than normal retirement benefits, it was due a credit in proportion to all of its contributions made to Mr. Williams' MERS account.[6] Accordingly, the hearing officer was correct in finding that the City is due a credit against Mr. Williams' worker's compensation benefits.[7].

*325 PERCENTAGE RATE USED IN CALCULATIONS
Mr. Williams' second assignment of error alleges that the hearing officer used an incorrect percentage rate to calculate the disability retirement credit.
Employer contributions to MERS are fixed by La.R.S. 33:7237:
Each participating employer of Plan A shall contribute an amount equal to 7.15% of each and every member's earnings, of which, 6.85% shall be credited to Pension Accumulation Fund A, and .30% shall be credited to the expense fund.
The City contends that for the period of October 1, 1978, to February 1, 1988, during all of which time the above statute applied, it is due credit for the 7.15% it contributed. Mr. Williams avers that, at the most, the City is due 6.85% since .30% was applied to the expense fund rather than to his pension fund.
La.R.S. 23:1225(C)(1)(c) allows an offset for "[b]enefits under disability benefit plans in the proportion funded by an employer." The employer funds the plan, not the benefits, and paying for the expenses of running the plan are an element of funding the plan. Therefore this assignment of error is without merit.

DECREE
Accordingly, the hearing officer's ruling is affirmed. Costs are assessed to the appellant, Huey P. Williams.
AFFIRMED.
NOTES
[1] The offset was awarded retroactively only to the date of judicial demand because the hearing officer found that the City and Mr. Williams had at one time an agreement that the City would not seek reduction.
[2] C. (1) If an employee receives remuneration from:

(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.
Although this statute has undergone amendments since the time of Mr. Williams' injury, we apply its current form. As this court has earlier held, the amendments have retroactive force because they clarify the statute's original meaning and intent. Nugent v. Dept. of Health & Human Res., 617 So.2d 1347 (La.App. 3 Cir.1993); Vallery v. State, 605 So.2d 1380 (La.App. 3 Cir.), writ denied, 609 So.2d 225 (La.1992).
[3] An actuarially-sound system "contains monies to pay future liabilities" while in a non-actuarially-sound system "current contributions/assessments... go to pay the current benefits being received by retired [employees], with the [employer] paying the balance. Under [a non-actuarially-sound system], there is no investment of monies contributed by employees nor money in a fund to pay future benefits." Cousins v. City of New Orleans, 580 So.2d 536, 539 (La.App. 4 Cir.1991).
[4] In Matthews, the Louisiana Supreme Court noted that the Vallery panel stated that it disagreed with the Fourth Circuit panel in Matthews which the Supreme Court affirmed; the Court then stated:

Without discussion of the correctness of the Vallery decision, we note that it is readily distinguishable on its facts. Vallery involved an actuarially sound retirement system in which the employee's retirement rights had vested by reason of years of service. Such is not the situation in the instant case as previously discussed.
Id. at 61. Moreover, the supreme court did not review Vallery; it merely denied writs. Denial of a writ does not connote approval of the appellate decision and has no precedential value. Stewart v. Robinson, 521 So.2d 1241 (La.App. 3 Cir. 1988).
[5] That "disability retirement benefits" and "normal retirement benefits" are two separate things is evinced by the wording of the statute outlining eligibility for disability retirement:

§ 1783. Eligibility for disability retirement
A member shall be eligible to retire and receive a disability benefit if he has at least five years of creditable service, is not eligible for normal retirement, and suffers disability.
La.R.S. 11:1783 (emphasis added). Similarly, the statutes use the term "disability benefit" as found in La.R.S. 23:1225(C)(1)(c) to mean "benefits paid for retirement occasioned by disability." See La.R.S. 11:1784, Computation of disability benefits ("(1) Upon retirement caused by disability, a member of Plan A shall be paid a disability benefit....").
[6] The Louisiana Supreme Court also notes in Matthews that "the requirement that the credit only be in proportion to the amount funded by the employer was apparently an effort to avoid a conflict with LSA-R.S. 23:1163, which prohibits an employer from collecting, directly or indirectly, from an employee, premiums for worker's compensation insurance." Matthews, 619 So.2d at 60, citing Cousins, 608 So.2d 978.

This comports with the reading of La.R.S. 23:1225(C)(1)(c) that allows an employer credit for his contributions in proportion to those of the employee rather than that which would provide the employer credit for his disability retirement funding in proportion to his normal retirement funding.
[7] However, we note also that, although not appealed, the arithmetic used in this case to prove the relative proportions paid by the City and Mr. Williams was faulty. The City's figures are as follows, the percentage rates given being based on Mr. Williams' pay during each of the relevant periods:

 Employee Employer
11/12/73-07/31/74 0 4.8%
08/01/74-04/31/76 0 5.5%
05/01/76-12/31/76 5.85% 5.85%
01/01/77-09/30/78 5.85% 5.85%
10/01/78-02/01/88 9.25% 7.15%
 ______ ______
 20.95% 29.50%

The City then simply added the totals of the percentage rates given (20.95 + 29.50 = 50.45) and divided total of its contributions by the grand total to derive its proportionate contribution to Mr. Williams' disability retirement plan (29.50 + 50.45 = .58).
This method fails to take into consideration both the amount of time over which a given percentage was contributed by each party and the changes in the amount of the employee's pay during that time. By not considering time and pay, some contributions made by the City are incorrectly given greater weight.