STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-954


TODD CROCHET

VERSUS

CALCASIEU PARISH POLICE JURY, ET AL.



**********



APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 03
PARISH OF CALCASIEU, NO. 14-03253
CHARLOTTE BUSHNELL, WORKERS' COMPENSATION JUDGE



**********



SHANNON J. GREMILLION
JUDGE



**********



Court composed of Marc T. Amy, Billy Howard Ezell, and Shannon J. Gremillion, Judges.



REVERSED AND REMANDED.

**Jeffrey Charles Napolitano**
**Juge, Napolitano, Guilbeau, Ruli and Frieman**
**3320 W. Esplanade Ave., North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Calcasieu Parish Police Jury**

**Kevin Louis Camel**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad St.**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Todd Crochet**

**GREMILLION, Judge.**

Defendant/appellant, the Calcasieu Parish School Board (CPSB) appeals the judgment in favor of plaintiff/appellee, its employee, Mr. Todd Crochet, which denied its claimed offset for disability benefits and awarded Mr. Crochet penalties and attorney fees. For the reasons that follow, we reverse and remand with instruction for the Workers' Compensation Judge (WCJ) to enter a judgment consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

Mr. Crochet injured his left leg and ankle on March 2, 1998, while working with a power saw clearing a right-of-way in the course and scope of his employment with CPSB. He received weekly indemnity benefits of $348.58 until September 18, 2014, when CPSB reduced them to $251.72 because of its contributions on Mr. Crochet's behalf to the Parochial Employees Retirement System (PERS). Until then, Mr. Crochet had received disability benefits from PERS in the amount of $932.75; however, this amount had changed through the years of his disability. On June 25, 2015, CPSB suspended Mr. Crochet's benefits, claiming a credit for $42,232.19 in past disability benefits paid by PERS.

Mr. Crochet opposed the reduction and suspension of his weekly indemnity. The matter proceeded to trial. The parties submitted the matter on stipulations, exhibits, and briefs.

One of the exhibits introduced at trial was the deposition of Mr. Gary S. Curran of G.S Curran & Co., Ltd., which provides actuarial consulting for all nine statewide retirement plans, including, of course, PERS. Mr. Curran testified that PERS is divided into two plans, Plan A and Plan B. Each plan has a separate trust into which contributions are paid. Plan A is a defined-benefit plan that

incorporates tenure-based retirement, disability retirement, and survivor benefits, the latter two of which Mr. Curran termed "ancillary benefits."

Sixty-two parishes participate in Plan A, and about 200 entities in all, including CPSB, participate in the plan. Payments into the PERS plans are not allocated to individual employees; however, the employees' contributions to PERS are tracked. Each governmental entity's annual contribution is fixed as a percentage of its total payroll, and the payments are made periodically. Allocations are also contributed by the State general fund, and a portion is funded by ad valorem taxes. These amounts and proportions change yearly. In establishing the rate each governmental entity must contribute, PERS makes no attempt to differentiate between tenure-based retirement and the ancillary benefits. The employee contributes between 9.25% and 9.5%, and that has consistently been the case since 1980. In 2015, employers contributed 10.5% of their total payrolls to fund PERS, and employees contributed 9.5%.

At trial, documents were introduced that showed the contributions, by percentage, between the employers and the employees, to PERS, from 1988 through 2001, the years Mr. Crochet contributed to PERS. Those showed that the following percentages were paid by employers:

| | |
|------|-------|
| 1988 | 7.15% |
| 1989 | 7.15% |
| 1990 | 8.50% |
| 1991 | 8.25% |
| 1992 | 9.25% |
| 1993 | 8.75% |
| 1994 | 8.25% |
| 1995 | 8.00% |
| 1996 | 7.25% |
| 1997 | 7.75% |
| 1998 | 7.75% |
| 1999 | 7.75% |
| 2000 | 7.75% |

|      |        |
|------|--------|
| 2001 | 7.75%  |

CPSB calculated the reduction of Mr. Crochet's weekly indemnity by comparing the proportion of his contribution, 9.5%, with the average of its contribution, 7.95%. That produced a percentage of the reduction of Mr. Crochet's benefits of 45.56%. Therefore, it reduced his weekly indemnity benefits by $96.86.

The WCJ ruled in Mr. Crochet's favor, reinstated his weekly indemnity, and awarded him penalties of $8,000.00 and attorney fees of $20,000.00. CPSB appeals this judgment and argues that the WCJ applied superseded law in ruling in Mr. Crochet's favor. It asks that we conduct a de novo review and render judgment in its favor.

## ANALYSIS

The reduction of workers' compensation benefits for other disability benefits paid by one's employer is governed by La.R.S. 23:1225. Pertinent to this case is subsection (C)(1)(c), which reads:

> C. (1) If an employee receives remuneration from:
>
> . . . .
>
> (c) Benefits under disability benefit plans in the proportion funded by an employer.
>
> . . . .
>
> then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.

In invoking the reduction in workers' compensation benefits under Section 1225, the employer assumes the burden of proving both the entitlement to and the amount of the credit. *Vallery v. State, through Dep't of Health and Hosp.*, 605

So.2d 1380 (La.App. 3 Cir.), *writ denied*, 609 So.2d 225 (1992). The employer satisfies that burden by showing that the employee is receiving disability benefits and then proving the proportion of its contribution to those the employee contributed, and the proportion need not be proven "with mathematical precision." *Matthews v. City of Alexandria*, 619 So.2d 57, 61 (La.1993).

However, Mr. Crochet argues that La.R.S. 23:1225 does not apply to him because PERS is governed by statutes that supersede the general workers' compensation statutes. Among those is La.R.S. 11:1934(E), which states:

> A disability retirement allowance shall be modified by the board of trustees when the sum of (1) a whole life annuity equivalent of the benefits or financial awards which accrue to a disability retiree solely as the result of his disability and (2) the disability pension to which the retiree is entitled exceeds the amount of his average final compensation, in such a manner that the sum of the above equals the amount of average final compensation. Should these outside benefits or awards be reduced, exhausted, or terminated, the board of trustees shall increase the disability pension then being received by a retiree so that the sum of the pension benefits and the outside benefits equals the amount of average final compensation; but, in no case shall the disability pension be increased to an amount greater than that to which the beneficiary was originally entitled when he retired. Individual private insurance settlements and separate private retirement accounts and any other similar private resources shall be specifically exempted from consideration in any of the above computations.

We disagree with Mr. Crochet's reading of the statute. In brief, Mr. Crochet highlighted the first sentence of the statute. However, a reading of the second sentence of La.R.S. 11:1934(E) shows that the legislature clearly contemplated that "outside benefits or awards," such as workers' compensation, might be reduced or terminated. In such a case, the PERS board of trustees "shall increase the disability pension then being received by [the] retiree." The two statutes operate in harmony to balance a disabled employee's workers' compensation benefits with those he derives from disability retirement.

4

Mr. Crochet also maintains that CPSB is not entitled to an offset because PERS is a tenure-based retirement plan and not a disability plan. Is support of this proposition, Mr. Crochet cites *Cousins v. City of New Orleans*, 608 So.2d 978 (La.1992). Mr. Crochet has misread *Cousins*.

Mr. Cousins had been employed as a firefighter in New Orleans for twenty-two years when he was injured on the job in 1983. In 1984, he retired from the City, which suspended his workers' compensation benefits. It resumed paying weekly indemnity after Mr. Cousins filed suit. He continued to receive benefits until 1987, when the city claimed it was entitled to an offset pursuant to La.R.S. 23:1225.

The supreme court looked to the unique statutes governing the Firefighters' Pension and Relief Fund in the City of New Orleans, which are now embodied in La.R.S. 11:3361, et seq. Under that plan, a firefighter such as Mr. Cousins, who was totally disabled on the job was eligible to receive fifty percent of his compensation or fifty percent of his compensation plus two-and-one-half percent for each year of service past twenty. La.R.S. 11:3376. Because Mr. Cousins was fully vested in the retirement system, he could have taken early retirement but chose disability retirement because it received more favorable tax treatment. Accordingly, the court ruled that the City was not entitled to its claimed offset.

The present case presents a markedly distinct scenario from *Cousins*. The statutes governing PERS contain no disability provision similar to that governing the Firefighters' Pension and Relief Fund in the City of New Orleans, La.R.S. 11:3376. Employees participating in PERS "Plan A," the defined-benefit plan, such as Mr. Crochet, are only eligible to retire when they achieve certain milestones: age sixty-five with seven years' service; age sixty with ten years'

service; age fifty-five with twenty-five years' service; any age with thirty years' service; or disability benefits at any age with five years' service if his disability status is approved by the State Medical Disability Board.[1] La.R.S. 11:1941, La.R.S. 11:209. Mr. Crochet was employed by CPSB in 1988 at age twenty-three. At the time of his disability, Mr. Crochet had nine-and-one-half years' service and was age thirty-two. Therefore, he was not vested in the tenure-based retirement component of PERS.

Still, the employer is required to prove that the employee is receiving disability benefits and the proportion of its contribution to those of the employee. CPSB presented the affidavit of Ms. Dainna S. Tully, Administrative Director of PERS. Ms. Tully asserted therein that Mr. Crochet receives disability retirement benefits from PERS and is not eligible for "normal" retirement benefits. She further attested that during the relevant years, those in which Mr. Crochet contributed to PERS, CPSB's annual contribution rate was as stated above. The average of those contributions is 7.95%. The sum of Mr. Crochet's and CPSB's contributions is 17.45%. Accordingly, CPSB contributed 45.56% compared to Mr. Crochet's 54.44%. The documents annexed to Ms. Tully's affidavit establish that Mr. Crochet receives disability benefits from PERS in the amount of $932.75 per month, which equates to $215.25 per week. Applying CPSB's 45.56% contribution to Mr. Crochet's disability benefits would yield an offset of $98.06, which is higher than the offset it claimed of $96.86.

CPSB urges us to conduct a de novo review of the record because the WCJ erred legally in such a manner that it impaired her fact finding. Ordinarily, the

---

[1] The age-and-service provisions only apply to those hired on or before December 31, 2006. La.R.S. 11:1941(A). They are different for those hired thereafter. La.R.S. 11:1941(B).

factual findings of a WCJ are subject to review under the manifest error standard. *Dean v. Southmark Constr.*, 03-1051 (La. 7/6/04), 879 So.2d 112. This requires the reviewing court to review the record in its entirety and determine whether it reasonably supports the WCJ's conclusions. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993).

> However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence.

*Evans v. Lungrin*, 97-0541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

The WCJ relied upon the case of *Nugent v. Dep't of Health & Human Serv.*, 617 So.2d 1347 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1226 (1993) for the proposition that the burden of proof imposed upon the employer requires that it prove not only the proportion of its contribution to the benefits, but also the proportion of those contributions that are strictly for disability retirement versus tenure-based retirement.

*City of Natchitoches v. Williams*, 94-1411 (La.App. 3 Cir. 5/24/95), 657 So.2d 320, recognized that *Nugent* was abrogated by *Matthews*, 619 So.2d 57. The court in *Williams* held that an "employer may not use the employee's *receipt* of normal retirement benefits as grounds for reduction." *Williams*, 657 So.2d. at 322 (emphasis added). The WCJ's approach, in following the *Nugent* case, fundamentally ignores the statutory framework within which PERS is operated. It is not possible for the employer to prove the percentage of its contribution that is applied to disability retirement because the statutory framework makes no such distinction. Applying the incorrect legal standard interdicted the WCJ's fact-finding process, necessitating a de novo review of the matter.

7

After a thorough review of the record, as set forth above, we conclude that CPSB is entitled to its claimed offset. The judgment of the WCJ denying CPSB's past offset is reversed.

CPSB also claims that it is entitled to suspend Mr. Crochet's benefits until the amount of its overpayment to Mr. Crochet is satisfied by the passage of time. Also annexed to Ms. Tully's affidavit was a history of payments by PERS to Mr. Crochet. Payments began on July 1, 2001. CPSB argues that it is entitled to this credit from July 1, 2006. This date corresponds to the date on which PERS removed its offset for workers' compensation benefits and began paying Crochet his full disability retirement benefit. Accordingly, CPSB is entitled to a credit for its overpayment of workers' compensation benefits from July 1, 2006, through its suspension of benefits on September 18, 2014. We have already noted, however, that there appears to be a discrepancy between the amount of offset claimed by CPSB and our calculation of the offset amount. Accordingly, we remand the matter to the WCJ with instructions to enter a judgment, consistent with our opinion, establishing with specificity the offset to which CPSB is entitled.

Because we have found for CPSB on all issues, we further reverse the WCJ's award of penalties and attorney fees. All costs of this appeal are taxed to plaintiff/appellee, Mr. Todd Crochet.

**REVERSED AND REMANDED.**