STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-464


TODD CROCHET

VERSUS

CALCASIEU PARISH POLICE JURY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT NO. 3
PARISH OF CALCASIEU, NO. 14-03253
CHARLOTTE BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett, Billy H. Ezell, Shannon J. Gremillion, Phyllis M. Keaty, John E. Conery, D. Kent Savoie, Van H. Kyzar, Candyce G. Perret, and Jonathan W. Perry, Judges.


**REVERSED AND REMANDED.**


**Conery, J., dissents and assigns reasons.**
**Gremillion, J., dissents for the reasons assigned by Judge Conery.**
**Kyzar, J., dissents and joins in the reasons assigned by Judge Conery.**
**Perry, J., dissents and joins in the reasons assigned by Judge Conery.**

**Kevin L. Camel**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA   70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Todd Crochet**

**Jeffrey C. Napolitano**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3320 West Esplanade Avenue North**
**Metairie, LA   70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Calcasieu Parish Police Jury**

**PERRET, Judge.**

This case is before this court following the workers' compensation judge's ("the WCJ") April 2, 2018 judgment on remand in favor of Calcasieu Parish Police Jury ("the CPPJ"). Todd Crochet ("Mr. Crochet") appeals the judgment on remand which awards an offset against his weekly workers' compensation benefits in the amount of $98.06 per week, awards a credit in the amount of $42,053.73, and entitles the CPPJ to suspend Mr. Crochet's weekly workers' compensation benefits until the overpayment has been satisfied. Because this case potentially conflicts with this court's opinion in *Sandifer v. Calcasieu Parish Public Works*, 17-343 (La.App. 3 Cir. 11/22/17), 234 So.3d 956, *writ denied*, 17-2148 (La. 3/9/18), 238 So.3d 449, it is decided *en banc* to reconsider the holding in *Crochet v. Calcasieu Parish Police Jury*, 16-954 (La.App. 3 Cir. 4/12/17), 217 So.3d 464, *writ denied*, 17-781 (La. 9/22/17), 228 So.3d 742 ("*Crochet* I"). For the following reasons, we reverse and remand.

**FACTS AND PROCEDURAL BACKGROUND:**

Mr. Crochet was injured in the course and scope of his employment with the CPPJ on March 2, 1998, leaving him totally disabled. At the time of his injury, Mr. Crochet participated in the Parochial Employees Retirement System ("PERS") Plan A, in which a single trust holds all contributions and investment income and in which all benefits are paid out of this trust fund. The trust receives its funds from four sources: employees, employers, ad valorem taxes, and the state general fund. All contributions are commingled.

Following his injury, Mr. Crochet received weekly workers' compensation benefits of $348.58. Mr. Crochet concurrently received payments from PERS, but on July 1, 2006, PERS removed its offset for workers' compensation benefits and began paying Mr. Crochet his full disability benefit. Thereafter, on September 18,

2014, the CPPJ reduced Mr. Crochet's workers' compensation benefits to $251.72 per week, claiming it is entitled to an offset due to Mr. Crochet's receipt of PERS benefits, to which the CPPJ contributed. *See* La.R.S. 23:1225(C).

On June 27, 2015, the CPPJ suspended Mr. Crochet's workers' compensation benefits claiming a credit for approximately $43,232.19 in past benefits Mr. Crochet received from PERS, beginning on July 1, 2006, through September 18, 2014. Mr. Crochet opposed the reduction and suspension, and the matter proceeded to trial.

At trial, the parties submitted the matter on stipulations, exhibits, and briefs. The exhibits included the affidavit of Ms. Dainna S. Tully, Administrative Director of PERS, with attached documents evidencing a history of payments by PERS to Mr. Crochet, and the deposition of Mr. Gary S. Curran of G.S. Curran & Co., Ltd., the expert actuary for PERS. The WCJ concluded:

> The jurisprudence is clear that the state is entitled to a credit for disability benefits paid to claimants in proportion to the amount funded by it. Based on the jurisprudence and the facts of this case, the Parish has failed to prove the amount of the reduction or credit to which it is entitled. The employer is unable to differentiate its contributions. An estimate of contributions is not sufficient to carry the required burden of proof.

The WCJ denied the CPPJ's claim for an offset and awarded Mr. Crochet penalties and attorney fees.

The CPPJ appealed, and this court rendered an opinion on April 12, 2017, reversing the judgment and remanding the matter back to the WCJ to enter a judgment consistent with the third circuit's opinion. *See Crochet* I, 217 So.3d 464. Specifically, the panel held that "[a]fter a thorough review of the record, . . . we conclude that [the CPPJ] is entitled to its claimed offset. The judgment of the WCJ denying [the CPPJ's] past offset is reversed." *Id*. at 470. This court continued, "We have already noted, however, that there appears to be a discrepancy between

2

the amount of offset claimed by [the CPPJ] and our calculation of the offset amount. Accordingly, we remand the matter to the WCJ with instructions to enter a judgment, consistent with our opinion, establishing with specificity the offset to which [the CPPJ] is entitled." *Id.*

Subsequently, a hearing on remand was held before the WCJ, and the only new evidence submitted was a letter from PERS to Susan Barron at the CPPJ notifying the parish that Mr. Crochet would begin receiving benefits. Thereafter, the WCJ entered judgment in favor of the CPPJ as follows:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury's request for an offset pursuant to Revised Statutes 23:1225(c) be and is hereby granted.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the offset against workers' compensation benefits owed shall be in the amount of $98.06 per week, beginning July 1, 2006[,] and continuing for as long as defendant, Calcasieu Parish Police Jury is paying to Todd Crochet workers' compensation benefits and disability retirement benefits under the PERS Plan concurrently.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury is entitled to a credit for its overpayment of workers' compensation benefits from July 1, 2006 through September 18, 2014 in the amount of $98.06 per week for a total credit of $42,053.73.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury is entitled to suspend the amount of its overpayment of weekly indemnity benefits to Todd Crochet until such time as the credit for overpayment has been satisfied.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim of Todd Crochet for penalties and attorney fees is hereby denied.

Mr. Crochet appeals and asserts the following assignments of error: (1) the WCJ erred in granting an offset pursuant to La.R.S. 23:1225(C) because the CPPJ failed to carry its burden in proving the amount it contributed to PERS on behalf of Mr. Crochet; (2) alternatively, the WCJ erred in granting the CPPJ an offset

3

retroactively to July 1, 2006, instead of prospectively from the date of judicial demand; and (3) alternatively, the WCJ abused its discretion in allowing the CPPJ to discontinue weekly benefits to recover the amount of any offset allowed under La.R.S. 23:1225(C).

**STANDARD OF REVIEW:**

On appeal, a workers' compensation court's factual findings are reviewed under the manifest error or clearly wrong standard of review. *Smith v. La. Dep't of Corrs.*, 93-1305 (La. 2/28/94), 633 So.2d 129. Therefore, after reviewing the record in its entirety, we must determine whether the factfinder's conclusion was a reasonable one. If so, we should not reverse, "even if convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently." *Romero v. Northrop-Grumman*, 01-24, p. 6 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, 1153, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144.

**DISCUSSION:**

According to Mr. Crochet, the CPPJ presented insufficient evidence to calculate the amount of its claimed offset. Mr. Crochet argues that under La.R.S. 23:1225(C) and *Sandifer*, 234 So.3d 956, the CPPJ must prove the amount of its contributions to PERS specifically on behalf of Mr. Crochet. Instead, Mr. Crochet argues, the only evidence in the record establishes the rate of the CPPJ's contributions by a percentage of the total payroll for all CPPJ employees. The CPPJ, on the other hand, asserts that this issue was already decided in *Crochet* I and, thus, not before the WCJ on remand.

Louisiana Revised Statutes 23:1225(C)(1) governs the reduction of workers' compensation benefits and provides that when an employee receives remuneration from both workers' compensation and disability benefit plans in which his employer contributes, "then compensation benefits under this Chapter shall be

4

reduced . . . so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage." Additionally, it is the employer's burden to prove not only its entitlement to an offset, but the amount of the offset. *See Sandifer*, 234 So.3d 956; *Crochet* I, 217 So.3d 464; *City of Natchitoches v. Williams*, 94-1411 (La.App. 3 Cir. 5/24/95), 657 So.2d 320. Thus, the employer's burden of proof in a worker's compensation offset claim is two-fold: first, the employer must prove it is entitled to an offset; second, it must prove the amount of the credit it is entitled to.

This court in *City of Natchitoches*, 657 So.2d 320, reviewed both steps of proving the employer's claim. This court noted that the supreme court's decision in *Matthews v. City of Alexandria*, 92-1784 (La.1993), 619 So.2d 57, set forth the requirement that an employer prove "that the employee was receiving disability benefits rather than normal retirement benefits and then by proving the proportion of funds contributed by the employer to those contributed by the employee." *City of Natchitoches*, 657 So.2d at 323.

This court determined that the employer carried its burden in proving the plaintiff received disability benefits because the plaintiff:

> [T]hrough his own action, purposefully elected to receive disability retirement benefits instead of waiting to receive his normal retirement. Whether he chooses disability retirement or normal retirement, the benefits were paid from the same source. By choosing disability retirement, [the plaintiff] necessarily precluded himself from receiving a normal retirement and, additionally, subjected himself to the possible consequences of his election, the most prominent of which is the City's exercise of its statutory right to seek an offset.

*Id*. at 324. This court concluded that the evidence showed that all of the employer's contributions to the plaintiff's MERS account provided disability benefits, not normal retirement benefits, and that the plaintiff was eligible only for disability retirement benefits. Thereafter, this court concluded that the employer

5

proved the proportion of funds it contributed to the plaintiff's MERS account. "[A] disability clerk retirement analyst with MERS, testified that the entire amount put into the fund both by the City and [the plaintiff] was used in payment of the disability benefit plan." *Id.* This court concluded that evidence was uncontradicted.

In *Sandifer*, this court found that the evidence presented by the Calcasieu Parish Public Works (Parish) was insufficient to support the Parish's claim of an offset for the amount it contributed to PERS for Mr. Sandifer's disability benefits and affirmed the WCJ's judgment in favor of Mr. Sandifer. The *Sandifer* Court distinguished *City of Natchitoches* by concluding that:

> Mr. Sandifer's benefits will convert to retirement benefits because of his years of service and his age. Unlike the testimony in *City of Natchitoches*, here, the Parish provided the testimony of Ms. Tulley which gave a percentage of the Parish's contribution. . . . However, the Parish failed to establish the amount contributed per employee or the individual contribution made by the employer. The Parish failed to meet its burden of proof for the offset because the Parish could not provide information which was not undisputed or uncontradicted testimony. The testimony provided by Ms. Tulley is disputed and contradicted by the testimony of the PERS actuary, Mr. Curran. The trial court found that Ms. Tulley provided a percentage for the overall employer contribution to PERS but found this to be an estimate and not exact. The trial court clearly relied on Mr. Curran's testimony which noted that the funds are so co-mingled that it is impossible to determine the contribution for an individual employee such as Mr. Sandifer.

*Sandifer*, 234 So.3d at 962. Instead, the *Sandifer* Court likened the situation of Mr. Sandifer to that in *Vallery v. State Through Department of Health & Hospitals*, 91-326 (La.App. 3 Cir. 9/4/92), 605 So.2d 1380, *writ denied*, 92-2845 (La. 12/11/92), 609 So.2d 225. In *Sandifer*, this court explained:

> "It was incumbent on the State to prove the proportion of its funding for disability benefits, in order to gain the offset." [*Vallery*,] 605 So.2d 1380, 1381. We opined that "[it] would have been relatively easy for the State to have produced expert actuarial testimony to establish the proportion of its funding of Vallery's disability benefit. It simply failed to do so." *Id.* at 1383. Ms. Vallery contributed 7% and

the State contributed 8% to the retirement fund. *Id.* Ms. Vallery needed to work ten years to vest into the regular retirement and was four years from the retirement age of 60. *Id.* Ms. Vallery worked twelve and a half years and had vested into the regular retirement threshold. *Id.* at 1382.

. . . .

Like the plaintiff in *Vallery*, Mr. Sandifer had vested in regular retirement because his years of working for the Parish. At retirement age, Mr. Sandifer's benefits convert to retirement. Thus, Mr. Sandifer is not precluded. Additionally, in *Vallery*, there was only one employer which allowed for an easier, formulaic approach when determining the offset.

*Sandifer*, 234 So. 3d at 961-62.

In *Crochet* I, this court acknowledged that evidence was introduced at trial exhibiting the contributions, by percentage, made by the CPPJ to PERS from 1988 through 2001 (the years Mr. Crochet contributed to PERS). The CPPJ's average contribution percentage was calculated based on its total payroll. The CPPJ also submitted an affidavit from Ms. Dainna S. Tully, Administrative Director of PERS. Ms. Tully attested that during the relevant years, the CPPJ contributed to PERS at an average rate of 7.95 percent annually, but that this contribution was calculated by a percentage of the CPPJ's total payroll. *Crochet* I, 217 So.3d 464.

The *Crochet* I Court also discussed the deposition testimony of Mr. Curran:[1]

Mr. Curran testified that PERS is divided into two plans, Plan A and Plan B. Each plan has a separate trust into which contributions are paid. Plan A is a defined-benefit plan that incorporates tenure-based retirement, disability retirement, and survivor benefits, the latter two of which Mr. Curran termed "ancillary benefits."

Sixty-two parishes participate in Plan A, and about 200 entities in all, including [the CPPJ], participate in the plan. Payments into the PERS plans are not allocated to individual employees; however, the employees' contributions to PERS are tracked. Each governmental entity's annual contribution is fixed as a percentage of its total payroll, and the payments are made periodically. Allocations are also contributed by the State general fund, and a portion is funded by ad

---

[1] Mr. Curran's deposition was taken in conjunction with both *Crochet* I and *Sandifer*—both cases are on the caption for the deposition transcript.

valorum taxes. These amounts and proportions change yearly. In establishing the rate each governmental entity must contribute, PERS makes no attempt to differentiate between tenure-based retirement and the ancillary benefits. The employee contributes between 9.25% and 9.5%, and that has consistently been the case since 1980. In 2015, employers contributed 10.5% of their total payrolls to fund PERS, and employees contributed 9.5%.

*Id*. at 466.

This court in *Crochet* I determined that the CPPJ proved it made a 45.56% contribution to PERS. However, this court could not determine the offset with specificity. This court calculated the offset at $98.06 per week, instead of $96.86 per week as claimed by the CPPJ. *Id.* Therefore, this court reversed the WCJ, concluding "that [the CPPJ] is entitled to its claimed offset." *Id.* at 470. Additionally, this court held:

> [The CPPJ] is entitled to a credit for its overpayment of workers' compensation benefits from July 1, 2006, through its suspension of benefits on September 18, 2014. We have already noted, however, that there appears to be a discrepancy between the amount of offset claimed by [the CPPJ] and our calculation of the offset amount. Accordingly, we remand the matter to the WCJ **with instructions to enter a judgment, consistent with our opinion, establishing with specificity the offset to which [the CPPJ] is entitled**.

*Id*. (emphasis added).

We note that Mr. Crochet assigns as error the WCJ's determination that the CPPJ is entitled to an offset of $98.06 per week. *Crochet* I previously determined that the CPPJ was entitled to an offset, but this court could not determine the offset amount with specificity. Therefore, the CPPJ argues that this court has already decided the issue of the CPPJ's entitlement to an offset and remanded the case only to correct the discrepancy in calculating the amount of said offset, which it alleges was due to the CPPJ rounding up the contribution percentage. As previously stated, it is the employer's burden of proving the amount of that credit. *See Sandifer*, 234 So.3d 956; *Crochet* I, 217 So.3d 464; *City of Natchitoches*, 657 So.2d 320.

8

Similar to *Sandifer*, Mr. Crochet was vested in retirement, however he had not reached the deferred benefit payment age. As noted in *Crochet* I, Mr. Crochet has "nine-and-one half years' service and was age thirty-two" at the time of his injury. *Crochet* I, 217 So.3d at 469. According to Mr. Curran, Mr. Crochet was eligible for normal retirement benefits at age sixty-five. Mr. Curran explains, "If they're vested with regard to retirement benefits, then at the point in which they attain the deferred benefit payment age, they can elect to receive the retirement benefit or continue to receive the disability benefit." Therefore, as in *Sandifer*, the CPPJ did not prove that the entire amount it contributed to PERS pays for Mr. Crochet's disability benefits as his benefits may convert to normal retirement benefits at age sixty-five. In fact, Mr. Curran testified that determining the percentage of the contributions the CPPJ makes to PERS "to fund the disability benefits versus the other benefits the employee is entitled to receive" would be impractical and that "[t]here's certainly no calculation made of that on an employer-by-employer basis." He continued, "It's going to vary. It would - - if you could make it for any given employer, it would vary from one employer to the next because of the different composition of the workforce by virtue of age, service, and salary of all those persons."

Additionally, the CPPJ did not provide uncontradicted evidence as in *City of Natchitoches*, nor is the PERS system made up of contributions solely from the employee and employer as in *Matthews*, 619 So.2d 57. The *Sandifer* Court also considered and distinguished *Matthews*:

> *Matthews* is distinguishable from this case because in *Matthews* there was only one entity, the City of Alexandria, contributing to the plan for the Alexandria Fireman's Pension and Relief Fund. *Id*. at 800. The employees paid a set amount, "contribut[ing] 8% of their monthly salaries and the City matches that contribution[.]" *Id*. at 58. The Louisiana Supreme Court affirmed this court's determination that the employer was "entitled to a credit against worker's [sic] compensation

9

benefits due the plaintiffs in the proportion funded by the City, and the City bore its burden of proving that the proportion funded by the City was 74.52%." *Id*. at 61. Further, the plan was a non-vested and non-tenured plan. *Id*. at 60.

Because only one entity participated and the evidence showed specific percentages of amounts paid over certain periods of time to an individual employee, a degree of certainty attributable to each employee and to the City is determinable. Here, however, sixty-two parishes participate in the PERS plan and the Parish could not provide an exact figure because there are other sources of revenue such as ad valorem taxes and revenue sharing from other entities. Additionally, the employer contribution is based on the percentage of payroll employees, not per employee.

*Sandifer*, 234 So.3d at 960-61 (first, second, and third alteration in the original).

As correctly noted by the WCJ at trial, the evidence presented in Mr. Crochet's case proved Mr. Crochet's employee contributions to PERS, but only the CPPJ's contribution to PERS as a rate "paid on total salary for all employees" and which is, therefore, "not allocated to each individual member." Mr. Curran testified that "[t]here is no record kept on an individual basis of what employer contributions are." However, Mr. Curran notes, "[I]f you want to - - you know, you can document what was contributed by each source each year, yes." Therefore, that number is not unattainable, the CPPJ simply provided insufficient proof of its contribution for Mr. Crochet's disability benefits.

Sitting *en banc*, the majority of this court agrees with the requirements as set forth in *Sandifer*. As in *Sandifer*, the CPPJ had the opportunity at trial and on remand to provide the math and establish the contribution with specificity as it applies to Mr. Crochet but failed to do so. Thus, although the CPPJ may reasonably be entitled to an offset, it failed to meet the burden of proving the amount of that offset at trial and on remand.

Additionally, Mr. Crochet requests attorney fees for the work performed by counsel at the trial on remand and this appeal. Considering attorney fees were

awarded originally by the trial court, and the work counsel for Mr. Crochet performed on appeal, we grant an additional $5,000.00 in attorney fees. *See Sandifer*, 234 So.3d 956 and *Oliver v. City of Eunice*, 10-1433 (La.App. 3 Cir. 6/8/11), 66 So.3d 1244.

## CONCLUSION

For the foregoing reasons, we reverse the April 2, 2018 Judgment, which granted the CPPJ an offset, a credit, suspended Mr. Crochet's benefits, and denied Mr. Crochet penalties and attorney fees. Instead, we reinstate the trial court's opinion dated September 12, 2016. Additionally, we grant $5,000.00 in additional attorney fees. All costs of this appeal are to be assessed to Calcasieu Parish Police Jury.

**REVERSED AND REMANDED.**

TODD CROCHET

VERSUS

CALCASIEU PARISH POLICE JURY

Conery, J., dissents and assigns reasons.

I respectfully dissent on the basis that the majority's decision in *Sandifer v. Calcasieu Parish Public Works*, 17-343 (La.App. 3 Cir. 11/22/2017), 234 So.3d 956, *writ denied*, 17-2148 (La. 3/9/18), 238 So.3d 449, does not negate the original, final ruling in *Crochet v. Calcasieu Parish Police Jury*, 16-954 (La.App. 3 Cir. 4/12/17), 217 So.3d 464, *writ denied*, 17-781 (La. 9/22/17), 228 So.3d 742 (*Crochet* I), which was a final judgment before *Sandifer* was decided. Chiefly, I find that even if the majority's analysis regarding *Sandifer* is technically correct, this court has no authority to address that issue given the nature of the initial, limited remand ordered in *Crochet* I.

On original appeal in *Crochet* I, this court reversed the Workers' Compensation Judge (WCJ) and found that the Calcasieu Parish Police Jury (CPPJ)[1] had proven its right to an offset of past disability it paid by the CPPJ on behalf of Mr. Crochet into the Parochial Employees Retirement System (PERS), pursuant to La.R.S. 23:1225(C)(1). The *Crochet* I panel also found that as Mr. Crochet's employer, the CPPJ was also "entitled to a credit for its overpayment of workers'

---

[1] The *Crochet* I opinion mistakenly refers to the Calcasieu Parish Police Jury as the Calcasieu Parish School Board. Therefore, we will insert CPPJ in place of CPSB as referenced in the *Crochet* I opinion.

compensation benefits from July 1, 2006, through its suspension of benefits on September 18, 2014." *Id.* at 470.

The *Crochet* I panel issued a limited remand to the WCJ to resolve any possible "discrepancy" between the amount of offset claimed by the CPPJ and the panel's calculation of the offset amount. The record contains testimony that there was an eighty-cent difference between the calculated amount found by the panel and the amount of offset claimed by the CPPJ. The *Crochet* I's limited remand stated, "Accordingly, we remand the matter to the WCJ with instructions to enter a judgment, consistent with our opinion, establishing with specificity the offset to which CP[PJ] is entitled." *Id.*

The *Crochet* I opinion of this court was issued on April 12, 2017. A timely application for writ of certiorari was filed with the supreme court, which was denied on September 22, 2017. Pursuant to La.Code Civ.P. art. 2166(E), *Crochet* I became "final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari." No request for rehearing was made in *Crochet* I.

As instructed by this court in its limited scope of remand issued to the WCJ in *Crochet* I, a hearing was held on February 7, 2018, to determine the exact amount of offset due to the CPPJ. Because the *Crochet* I panel had already calculated the exact amount of the offset, no remand was actually required. However, the panel issued the limited remand in the unlikely event it had miscalculated the exact amount of the offset. There was no remand on whether the CPPJ was entitled to an offset or the method as to how that offset should be calculated.

2

Given the limited nature of the remand, no new evidence was considered by the WCJ. Oral reasons for judgment were issued by the WCJ on May 24, 2018, and a judgment on limited remand was signed on April 2, 2018 **with the exact offset calculated by the *Crochet* I panel.** (Emphasis added) The WCJ's judgment on limited remand stated as follows:

> In consideration of the April 12, 2017 opinion of the 3rd Circuit, the Court finds as follows:
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury's request for an offset pursuant to Revised Statutes 23:1225(c) be and is hereby granted.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the offset against workers' compensation benefits owed shall be in the amount of $98.06 per week, beginning on July 1, 2006 and continuing for as long as defendant, Calcasieu Parish Police Jury is paying to Todd Crochet workers' compensation benefits and disability retirement benefits under the PERS Plan concurrently.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury is entitled to a credit for its overpayment of workers' compensation benefits from July 1, 2006 through September 18, 2014 in the amount of $98.06 per week for a total credit of $42,053.73.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Calcasieu Parish Police Jury is entitled to suspend the amount of its overpayment payment of weekly indemnity benefits to Todd Crochet until such time as the credit for overpayment has been satisfied.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim of Todd Crochet for penalties and attorney fees is hereby denied.

It is worth repeating that *Crochet* I had been appealed and writs were denied by the supreme court on September 22, 2017, a full two months prior to the November 22, 2017 opinion in *Sandifer* issued by a different panel of this court. Writs were denied by the supreme court in *Sandifer* on March 9, 2018, some six months later. By that time, the *Crochet* I case on limited remand had been heard by

3

the WCJ and judgment rendered shortly thereafter on April 2, 2018, which judgment was exactly in accord with the *Crochet* I panel's offset calculation.

The WCJ was aware of the *Sandifer* case, but was bound by the final ruling in *Crochet* I wherein this court found that the CPPJ had proved its right to an offset against the workers' compensation benefits paid to Mr. Crochet, the method by which the offset should be calculated, and the exact amount of the offset to the penny. Therefore, the WCJ properly did not consider any additional evidence at the hearing on February 7, 2018, as at the time of the hearing on limited remand in *Crochet* I, those issues had been decided, and the judgment was final. The WCJ, as instructed by this court in its limited remand, only determined "with specificity the offset to which the [CPPJ] [was] entitled." This point is reiterated in the dissent in *Sandifer* authored by the writing judge in *Crochet* I, Judge Gremillion, wherein he stated, "The standard imposed by the majority is contrary to *Crochet* [I], which controls this matter." *Sandifer*, 234 So.3d at 965.

Despite the limited nature of the remand, the plaintiff in this en banc appeal again challenges the merits of *Crochet* I and seeks to once again raise the issue of the entitlement of the CPPJ to an offset. The majority opinion considers and disposes of that issue as presented by the claimant directly contrary to the final decision in *Crochet* I. In the *City of Shreveport v. Kansas City Southern Railway Co.*, 190 So. 404, 406 (La.1939), *cert. denied*, 308 U.S. 621, 60 S.Ct. 298 (1939), the supreme court declined to consider issues addressed in its prior consideration of that matter and explained, "We will not recite or discuss the issues previously decided by this Court in this case, see … 166 So. 471, since the decision is final on those issues and has become the law of the case." *See also Picard v. Vermillion Par. Sch. Bd.*, 00-1222 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, *writ denied*, 01-1346 (La. 6/22/01),794

4

So.2d 794, which held that a trial court must not consider issues other than those for which the case was remanded. Therefore, the merits of *Crochet* I, which fall outside the limited remand issued to the WCJ by this court, could not and cannot now be revisited.

***Application of Louisiana Revised Statutes 23:1310.8(E)***

Further, I would urge the application of La.R.S. 23:1310.8(E), which specifically applies to workers' compensation benefits and provides, "A judgment denying benefits is res judicata after the claimant has exhausted his rights of appeal." In *Davis v. State, Department of Transportation & Development*, 11-404 (La.App. 3 Cir. 10/5/11), 75 So.3d 549, *writ denied*, 11-2456 (La. 1/13/12), 77 So.3d 969, a panel of this court applied La.R.S. 23:1310.8(E) and found that once all appeal rights had been exhausted, the elements of res judicata applied.

In *Davis*, 75 So.3d at 552, the court found that res judicata applied based on the statutory requirements summarized as follows:

> The peremptory exception of res judicata bars a subsequent judgment when "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases."

> *Zeno v. Flowers Baking Co.*, 10-1413, p. 6 (La.App. 3 Cir. 4/6/11), 62 So.3d 303, 307 (quoting *Jones ex rel. Jones v. GEO Group, Inc.*, 08-1276, p. 5 (La.App. 3 Cir. 4/1/09), 6 So.3d 1021, 1025).

In *Davis*, the court also found that the issues pertaining to Ms. Davis' entitlement to workers' compensation and medical benefits had been fully litigated before the WCJ in the original hearing and that all appellate rights had been exhausted. Accordingly, this court affirmed the WCJ's judgment granting the exception of res judicata in favor of the State.

As in *Davis*, all of the issues surrounding the determination of the CPPJ's right to an offset and the evidence supporting the amount of the offset were presented and decided by a panel of this court in *Crochet* I and all appellate rights were exhausted, making a retrial of the case based on the burden of proof espoused in *Sandifer* improper, as found by the WCJ based on the limited remand issued by this court. Accordingly, I would affirm the judgment of the WCJ dated April 2, 2018, adopting the calculation of the amount of the offset, as exactly calculated by the *Crochet* I panel.

## *Suspension of Benefits*

On limited remand, the WCJ further ordered that the CPPJ suspend all workers' compensation benefits until the total amount of the offset had been paid. In the April 2, 2018 judgment on limited remand, consistent with our holding in *Crochet* I, the WCJ determined that the offset amount owed the CPPJ by Mr. Crochet was $42,053.73. The WCJ further ordered that the CPPJ was entitled to suspend the payment of all workers' compensation benefits until such time as the entire overpayment had been satisfied.

> Louisiana Revised Statutes 23:1206 provides as follows:
>
> Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.

Louisiana Revised Statutes 23:1206 applies even when the overpayment is the result of the employer's error in calculating benefits. *Hargrave v. State ex rel. Dep't of Transp. & Dev.*, 09-818 (La.App. 3 Cir. 4/7/10), 35 So.3d 437. The statute further allows the discontinuation of benefits until the overpayment is satisfied by

6

the passage of time. *Breaux v. Petro Drive, Inc.*, 534 So.2d 48 (La.App. 3 Cir. 1988).

After finding that the CPPJ was entitled to the offset and reversing the WCJ, the panel in *Crochet* I, 217 So.3d at 470, stated, the CPPJ "also claims that it is entitled to suspend Mr. Crochet's benefits until the amount of its overpayment to Mr. Crochet is satisfied by the passage of time." The panel went on to find that the CPPJ was due a credit for the overpayment of workers' compensation benefits from July 1, 2006 to September 18, 2014. The *Crochet* I panel, however, did not decide whether all workers' compensation benefits should stop until the offset was completely paid.

Mr. Crochet argues in the alternative that the WCJ abused her discretion in ruling that all of his benefits from the CPPJ were to be suspended until the PERS disability offset was completely paid. Counsel for the CPPJ argues that the WCJ "considered the size of the credit, the age of the claimant, as well as the amount of disability benefits under PERS" that [Mr. Crochet] is presently receiving." However, the WCJ's oral reasons for judgment do not contain the analysis suggested by counsel and give no basis for the WCJ's determination that Mr. Crochet's benefits should be suspended entirely until the offset is paid.

Mr. Crochet's current full compensation rate is $348.58 per week. If the CPPJ suspended this amount until the full offset was satisfied, the amount owed would be paid in approximately two years and four months. The WCJ found that Mr. Crochet's weekly PERS disability offset amounted to $98.06. If the CPPJ was allowed to deduct only the weekly offset of $98.06, Mr. Crochet would be entitled to a weekly benefit of $250.52 in workers' compensation benefits from the CPPJ. The amount of offset owed by Mr. Crochet would then be paid in approximately

eight years and five months, roughly the same amount of time the CPPJ waited until it made demand for the offset.

Mr. Crochet is presently being paid $932.75 per month in PERS retirement disability benefits. Although CPPJ argues the suspension of his weekly workers' compensation benefits will not leave him "destitute," counsel for Mr. Crochet ably argues that the loss of $1,394.32 monthly that Mr. Crochet was previously receiving in workers' compensation benefits would undoubtably result in significant hardship to Mr. Crochet. *See Reed v. Mid-States Wood Preservers, Inc*., 43,799 (La.App. 2 Cir. 12/3/08), 999 So.2d 189, *writ denied,* 09-0009 (La. 2/20/09), 1 So.3d 500.

Considering the foregoing, and in the interest of justice, I would find that the WCJ abused her discretion in suspending all weekly benefits to Mr. Crochet until the total amount of the $42,053.73 has been paid. I would, therefore, reverse only that portion of the judgment on limited remand allowing the CPPJ to completely suspend weekly benefits to Mr. Crochet until the entire amount of the disability offset has been satisfied. The CPPJ should be allowed to deduct only the weekly offset of $98.06 from Mr. Crochet's benefits leaving a total of $250.52 in weekly workers' compensation benefits to be paid to Mr. Crochet until the full amount of the retirement disability offset owed to the CPPJ in the amount of $42,053.73 is paid.